UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHANIEL ROBINSON and DAVID EVANS, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>   -*against*-<br><br>NEW YORK CITY TRANSIT AUTHORITY; FERNANDO FERRER, in his official capacity as Acting Chairman of the New York City Transit Authority; and ANDY BYFORD, in his official capacity as President of the New York City Transit Authority,<br><br>       Defendants. | No. Civ. 18-_____<br>**ECF Case**<br><br><br><br>**COMPLAINT** |

### INTRODUCTION

1. This civil rights class action challenges the lack of due process afforded individuals by Defendant New York City Transit Authority ("NYCTA") in connection with default judgments for alleged violations of transit rules of conduct.

2. NYCTA fails to provide adequate notice of these default judgments to many members of the putative class, including the Named Plaintiffs, who first learn that NYCTA obtained default judgments against them when they receive notice that their state tax refunds have been or will be offset to enforce the judgments.

3. NYCTA obtained the default judgments against Named Plaintiffs without their knowledge more than a decade ago and, in some instances, more than twenty years ago.

4. Because Defendants fail and refuse to provide Named Plaintiffs and putative class members the most basic information concerning the alleged violations, including copies of any

relevant Notice of Violation ("NOV"), Named Plaintiffs and putative class members cannot effectively contest the default judgments and, as pertains to Named Plaintiffs and many class members, the seizures of their tax refunds.

5.      Defendants' customs, policies, and practices with respect to obtaining and enforcing default judgments, including for some putative class members through tax refund offsets, have affected thousands of individuals.

6.      The seizure of tax refunds, even if small in amount, adversely impacted Named Plaintiffs and adversely impacts many class members who are low-income.

7.      Defendants' customs, policies, and practices with respect to obtaining and enforcing default judgments violate the rights of Named Plaintiffs and the punitive class under the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. Section 1983.

**PARTIES**

8.      Named Plaintiff Nathaniel Robinson resides in Bronx, New York.

9.      Named Plaintiff David Evans resides in Brooklyn, New York.

10.      Defendant NYCTA, a municipal board, with an office in New York, New York, is a public benefit corporation established by the laws of the State of New York.

11.      Defendant Fernando Ferrer, Acting Chairman of NYCTA, is sued in his official capacity.

12.      Defendant Andy Byford, President of NYCTA, is sued in his official capacity.

13.      Defendants are responsible for the operation of the Transit Adjudication Bureau ("TAB").

14.     Defendant Byford appoints, and NYCTA compensates, the TAB hearing officers who preside at hearings and adjudicate alleged transit rule violations.

15.     TAB remits any monies it collects for alleged transit rule violations to NYCTA.

## JURISDICTION AND VENUE

16.     This action is brought to enforce federal constitutional rights pursuant to 42 U.S.C. § 1983.

17.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(4).

18.     Venue lies within this District pursuant to 28 U.S.C. § 1391(b).

## STATUTORY AND REGULATORY SCHEME

19.     NYCTA operates the New York City Bus, the New York City Subway, and the Staten Island Railway. *See* N.Y. Pub. Auth. Law § 1202(1); http://web.mta.info/nyct/facts/about_us.htm.

20.     NYCTA promulgates Rules of Conduct ("Rules") for those who use the New York City's transit system. *See* N.Y. Pub. Auth. Law §§ 1203-a(3), 1204(5-a).

21.     New York City police officers and transit inspectors issue citations for violations of these Rules, which may be either a criminal court summons or a NOV. *See* N.Y. Pub. Auth. Law § 1209-a.

22.     NOVs are adjudicated in administrative hearings conducted by TAB. *See* N.Y. Pub. Auth. Law § 1209-a.

23.     A NOV shall be served by delivering the notice within the state to the person to be served. *See* N.Y. Pub. Auth. Law § 1209-a(5).

24.     A NOV "shall contain information advising the person charged of the manner and the time within which such person may either admit or deny the offense charged in the notice." *See* N.Y. Pub. Auth. Law § 1209-a(5).

25.     A NOV must advise the person that a failure to respond to the notice "*may* result in a default decision and order being entered against such person, and the imposition of supplemental penalties[.]" *See* N.Y. Pub. Auth. Law § 1209-a(5) (emphasis added).

26.     "A copy of each notice of violation . . . shall be filed and retained" by TAB. *See* N.Y. Pub. Auth. Law § 1209-a(5).

27.     TAB's guidelines governing its proceedings, adopted pursuant to N.Y. Pub. Auth. Law § 1209-a(4)(d) (the "Guidelines"), also require that a copy of each NOV be filed and retained by TAB. Guidelines § 2.1.

28.     The Guidelines, however, permit TAB to destroy records after four months, even though TAB seeks to enforce judgments for NOVs years later. *See* Guidelines § 1.8(a).

29.     An individual who fails to respond to a NOV within the time specified, or responds but fails to appear at the hearing date, is deemed to have admitted liability, providing grounds for entry of a default decision and an order and imposition of a penalty. *See* N.Y. Pub. Auth. Law § 1209-a(6).

30.     Any judgment rendered by TAB may be entered in the Civil Court of the City of New York. N.Y. Pub. Auth. Law § 1209-a(9)(b).

31.     Before a default judgment may be entered, TAB must have attempted to notify the respondent by first-class mail of the default decision and order and the penalty imposed, that a judgment will be entered in the Civil Court of the City of New York, and that the entry of such judgments may be avoided by requesting a stay of default for good cause shown and either requesting a hearing or entering a plea pursuant to TAB's rules within 30 days of the mailing of such notice. N.Y. Pub. Auth. Law § 1209-a(9)(c); *see also* Guidelines 3.8(b).

32.     Under the New York Civil Practice Law and Rules, a money judgment may be enforced for 20 years, and accrues interest from the date of entry at the rate of nine percent per year. *See* CPLR §§ 211(b), 5003, 5004.

33.     Pursuant to section 171-f of the Tax Law, NYCTA has the authority to certify any debt owed to it that is "past due and legally enforceable" to the Commissioner of the Department of Taxation and Finance ("DTF") to offset a tax refund to pay the outstanding debt as part of the Statewide Offset Program ("SWOP"). NY Tax § 171-f.

34.     The Guidelines permit the imposition of a $25 default penalty if the individual fails to appear at TAB on his or her designated hearing date. *See* Guidelines § 4.2(a).

35.     The Guidelines also permit the imposition of a second $25 default penalty if the individual failed to appear at TAB on his or her designated hearing date and is still in default more than 30 days afterwards. *See* Guidelines § 4.2(b).

### FACTS COMMON TO THE CLASS

36.     New York law requires that an NOV be delivered within the state to the person charged of a violation and that TAB notify any such person of a default decision by first-class mail before a default judgment may be entered. *See* N.Y. Pub. Auth. Law §§ 1209-a(5), 1209-a(9)(c); *see also* Guidelines 3.8(b).

37.     In 2016, the New York State Comptroller audited TAB's collection practices and released a report (the "Report") that stated approximately 40% of the random sample of NOVs reviewed for the Report contain inaccurate address information.

38.     Many putative class members do not receive the notices they are entitled to under New York law.

39.     TAB does not make reasonable efforts to ensure the accuracy of address information before referring a default judgment to SWOP.

40.     TAB has a custom, policy, and practice of referring default judgments to SWOP whenever it has a valid Social Security Number associated with the judgment and $25 or more is due.

41.     Accurate address information is not part of TAB's criteria for referral to SWOP.

42.     Although TAB's custom, policy, and practice is to send a letter to the last known address in its files prior to making the SWOP referral, TAB does not take all steps necessary to ensure the address information is correct.

43.     TAB's policy and practice of not retaining all NOVs means that those NOVs that could help confirm TAB's default judgments have not been entered against the correct person upon proper notice are unavailable for review.

44.     TAB's hearing guidelines direct TAB to maintain documents such as notices of violations only "for a period of not less than four months from the date that all administrative remedies have been exhausted." *See* Guidelines § 1.8(a).

45.     Even where TAB has maintained original or scanned copies of documents such as a NOV, TAB does not consistently produce documents to persons requesting them.

46.     TAB has no written guidelines regarding producing documents upon requests; rather, TAB has a custom, policy, and practice of refusing to provide requested documents, rendering it impossible to challenge default judgments.

47.     TAB has a custom, policy, and practice to offer to provide documents only if the requesting person pay $10 per document, which in most instances amounts to a substantial portion of the very judgment the requesting person is attempting to challenge.

48.    TAB's custom, policy, and practice is to refuse to waive the $10 per document fee under any circumstances, even if a person requesting the document is indigent.

49.    TAB's custom, policy, and practice is to provide a "status letter" and no other information to persons who have default judgments and request copies of their records.

50.    The "status letter" lists only (i) a violation number; (ii) the purported issue date; (iii) the "status" of the violation; (iv) the amount purportedly due; and (v) a non-descript summary of the offense, such as "littering, urinating, defecating, spitting, unauth trash removal."

51.    The "status letter" does not contain sufficient information to demonstrate that a default judgment was entered against the correct person upon proper notice.

52.    The "status letter" cannot confirm whether the fields on the NOV setting forth the time and date of the hearing, as well as other fields, were in fact legibly filled out by the citing officer or transit inspector.

53.    The "status letter" does not contain information demonstrating when and how—including to what address—TAB purportedly provided the person with notice of a default decision and order.

54.    The "status letter" does not contain information demonstrating when and how—including to what address—TAB purportedly provided the person with notice of a default judgment.

55.    The "status letter" does not contain information demonstrating when and how—including to what address—TAB purportedly provided the person with notice of the SWOP referral.

56.     Only after a TAB hearing officer requests additional information does a TAB employee offer to provide unspecified documents on a cost-prohibitive basis, though TAB itself is not always certain as to whether it has any documents relating to particular violations.

57.     TAB's customs, policies, and practices result in the denial of information necessary to challenge the default judgments.

58.     Thousands of putative class members are unaware that TAB has entered a default judgment against them until their tax refunds are seized by DTF.

59.     By the time many putative class members' tax refunds are seized by DTF, the putative class members have no way to challenge the offset because TAB either has already destroyed all the evidence that those persons could have used to support their claims and/or defenses or refuses to provide such evidence.

## THE NAMED PLAINTIFFS

### *Named Plaintiff David Evans*

60.     Named Plaintiff David Evans is a black New York City resident and Marine Corps veteran.

61.     Mr. Evans, who formerly was homeless, worked as a delivery person before getting injured.

62.     Because of his injury, Mr. Evans currently is unemployed and subsists on Social Security Disability Insurance.

63.     In or around November 2016, Mr. Evans received two separate notices from TAB, both dated November 17, 2016, stating that TAB was referring two outstanding TAB violations to DTF for tax refund offset.

64.     The combined amount due on the two alleged violations was $433.83.

65.     The November 2016 TAB offset notices were the first notices that Mr. Evans received informing him of these two alleged violations.

66.     The TAB offset notices state that "[i]f you wish to dispute this matter, you must appear at TAB in person at the address listed above" and that "[y]ou will be given the opportunity to present both written and oral evidence and arguments in support of your defense to the default judgment."

67.     In response to the TAB offset notices, Mr. Evans visited TAB three times in or around late 2016 and requested an opportunity to dispute the default judgments.

68.     On Mr. Evans' first two visits, TAB turned him away without an opportunity to challenge the default judgments.

69.     During Mr. Evans' third visit, Mr. Evans appeared before a TAB hearing officer.

70.     The hearing officer stated that because Mr. Evans had failed to respond to notices relating to the alleged violations, he was liable for the fines assessed and that, because he was working at that time, his wages would be garnished.

71.     The hearing officer did not provide Mr. Evans with a written decision or any documentation pertaining to the alleged violations or the default judgments rendered by TAB.

72.     In or about April 2017, Mr. Evans received a letter from DTF stating that his wages would be garnished.

73.     Believing that the threatened garnishment stemmed from the TAB default judgments, Mr. Evans went to TAB on or about April 19, 2017 to request information.

74.     A TAB employee provided Mr. Evans only a "status letter" dated April 19, 2017, listing ten "offenses" with a total amount due of $1,904.63 and that categorized three of the offenses as "written off" and the remaining seven offenses as "SWOP."

75.     On or about August 17, 2017, Mr. Evans again went to TAB to request information related to the default judgments.

76.     A TAB employee printed out a "status letter" dated August 17, 2017 that listed the same ten violations as in the April 19th letter but a higher total amount due of $1,962.16.

77.     The status letters state that all but one of the alleged violations date from between January 1999 and December 2001 and that one alleged violation dates from December 2005.

78.     At the time of all of the alleged violations, Mr. Evans was homeless and indigent, and sleeping at homeless shelters where identity theft was a frequent occurrence.

79.     Mr. Evans requested copies of the original NOVs purportedly served upon him, but the TAB employee stated that the only information available was the status letter.

80.     Mr. Evans also requested from the TAB employee records from his 2016 appearance before the TAB hearing officer, such as a transcript and a copy of the decision, but was told that no such information was available and that TAB had no record of his appearance before the hearing officer.

81.     TAB had already entered default judgments against Mr. Evans for all ten alleged violations.

82.     Mr. Evans never received notice from TAB that a default judgment would be or had been entered against him for any of the alleged violations.

83.     On or about November 6, 2017, Mr. Evans' counsel, on Mr. Evans' behalf, sent a letter to TAB requesting information and documents pertaining Mr. Evans' alleged violations and default judgments.

84.     On or about December 15, 2017, TAB responded to the November 6, 2017 request for information and documents by sending another status letter.

85.     On or about November 15, 2017, Mr. Evans, with the assistance of counsel, submitted requests to vacate the ten TAB default judgments.

86.     On or about January 3, 2018, TAB provided responses to seven of the default judgments, by stating that TAB was vacating one (Violation No. 083504154), requesting more information concerning two (NOV Nos. 072881849 and 081014396) and denying the request as to four (Violation Nos. 087001760, 081031812, 096387500 and 083140155).

87.     In vacating the default judgment for Violation No. 083504154, the TAB hearing officer stated that "[t]he NOV is not legally sufficient to establish a prima facie case" because "[t]he NOV image…is illegible and the details of the violation cannot be ascertained," thus demonstrating that TAB has documents that it repeatedly refused to provide to Mr. Evans.

88.     In responding to Mr. Evans' request to vacate the default judgment for NOV No. 072881849, the TAB hearing officer stated *both* that "the NOV establishes a prima facie case" *and* that "the TAB copy of the Notice of Violation has been archived and is not currently available for review."

89.     Similarly, in responding to Mr. Evans' request to vacate the default judgment for NOV No. 081014396, the TAB hearing officer described the allegations in the NOV *and stated* that "the TAB copy of the Notice of Violation has been archived and is not currently available for review."

90.     In responding to Mr. Evans' requests to vacate the default judgments for NOV Nos. 072881849 and 081014396, the TAB Hearing Office further ordered that TAB retrieve the NOVs "from the archive" and that Mr. Evans appear after 60 days with evidence to rebut the NOVs that he has never seen and that TAB repeatedly refused to provide.

- 11 -

91.    With regards to NOV Nos. 072881849 and 081014396 and Violation Nos. 087001760, 081031812, 096387500 and 083140155, the TAB hearing officer also stated, "When the Respondent failed to answer the NOV on or before the hearing date, it was deemed that an admission to the charge had been made pursuant to the warning on the NOV and the mandatory fine was imposed with an additional $25 penalty and TAB mailed a First Notice of Default to the Respondent.  When the Respondent failed to respond to the First Notice of Default within 30 days, a second $25 penalty was assessed and a Notice of Impending Judgment was mailed to the Respondent."

92.    Mr. Evans never received any "First Notice of Default" from TAB regarding these alleged NOV Nos. or Violations Nos.

93.    Mr. Evans never received any "Notice of Impending Judgment" from TAB regarding these alleged NOV Nos. or Violations Nos.

94.    TAB's written responses to each of the violations further stated, "This request for additional information will not be considered an adjournment of this matter. All collection and enforcement proceedings (i.e. garnishment of wages, seizure of bank account, lien on real property) will continue and remain in effect."

95.    The TAB hearing officer denied the requests to vacate the remaining four default judgments (Violation Nos. 087001760, 081031812, 096387500 and 083140155), despite Mr. Evans' statements that he did not receive the NOVs, on the ground that Mr. Evans "submit[ted] no documentation establishing that any of the information contained in the NOV is incorrect," thereby faulting Mr. Evans for failing to rebut documents that he has never seen and TAB repeatedly refused to provide to him.

96.     On or about February 21, 2018, TAB responded to Mr. Evans' request for more
information concerning the remaining three default judgments (NOV Nos. 084996551,
086408071, and 085650988).

97.     In response to each of these violations, the TAB hearing officer stated, "When the
respondent failed to answer the NOV (either in person or by mail) on or before the hearing date,
a $25 default penalty was assessed pursuant to the warning on the NOV, and a first notice of
default was sent to the respondent.  When the respondent failed to answer the notice of default
within the next 30 days a second $25 default penalty was assessed and a notice of impending
judgment default was mailed to respondent."

98.     Mr. Evans never received any "First Notice of Default" from TAB regarding
these alleged violations.

99.     Mr. Evans never received any "Notice of Impending Judgment" from TAB
regarding these alleged violations.

100.    TAB's February 21, 2018 responses to NOV Nos. 084996551, 086408071, and
085650988 referred to the contents of the NOVs and directed Mr. Evans to appear at TAB in
person and bring information "in support of his claim that he does not believe the NOV was
issued to him," even though TAB repeatedly refused to provide him with a copy of the NOVs.

101.    TAB's responses to each of these violations further stated, "This request for
additional information will not be considered an adjournment of this matter. All collection and
enforcement proceedings (i.e. garnishment of wages, seizure of bank account, lien on real
property) will continue and remain in effect."

102.    On or about April 20, 2018, Mr. Evans visited TAB again, and again requested
that TAB provide relevant documents, including copies of the NOVs, any notices allegedly

provided to Mr. Evans, any documents that the hearing officer relied upon in requesting further information from Mr. Evans to adjudicate the requests to vacate the default judgments, and information concerning which alleged violations have caused tax refund offsets and the amount of such offsets.

103.   TAB refused to tell Mr. Evans what documents it had available and demanded that Mr. Evans pay $10 to review each document, which could total as much as $400 for the requested documents and $100 for the NOVs.

104.   Mr. Evans did not have the $10 needed to review one NOV, let alone the $100 necessary to review all ten of them.

105.   On or about May 16, 2018, Mr. Evan's counsel visited TAB in an attempt to obtain documents on Mr. Evans' behalf.

106.   A TAB employee stated that:

- Only NOVs could be provided;

- Each NOV would cost $10 to view;

- The $10 per document fee could not be waived for the indigent;

- It was up to the hearing officer whether to show Mr. Evans the relevant documents that the hearing officer would consider at any hearing;

- It was up to the hearing officer whether to adjourn a hearing if the hearing officer decided to provide Mr. Evans the relevant documents that the hearing officer would consider at any hearing;

- Some NOVs may be "too old" to access; and

- TAB would not inform counsel which NOVs were actually available because Mr. Evans' release form was not notarized.

107.   TAB informed counsel that none of these aforementioned policies were written and that TAB does not "have written policies for this sort of thing"; rather, this was TAB's custom, policy, and practice with respect to requests for TAB records.

108.   TAB has provided Mr. Evans with no additional information and his default judgments have not been vacated.

109.   Without viewing any of these documents, Mr. Evans cannot prepare a meaningful challenge and present meritorious defenses to any TAB default judgments.

110.   In 2018, Mr. Evans' entire tax refund for the tax year 2017 was offset due to TAB debts.

111.   Part of the offset appears to have been for Violation No. 083504154, which TAB dismissed in January 2018, as stated above, but TAB has not returned the money offset – more than $400 – to Mr. Evans.

112.   According to a TAB status letter dated January 18, 2019, Mr. Evans still owes NYCTA and TAB $1,293.06 for the nine alleged violations that TAB did not dismiss.

113.   Upon the filing of Mr. Evans' future tax returns, any refund due to him will be subject to offset because the outstanding alleged debts due to NYCTA have not been satisfied.

114.   Mr. Evans cannot meaningfully contest the default judgments or the related tax refund offsets because TAB has repeatedly denied him access—through the application of its customs, policies, and practices—to copies of the NOVs and other documents setting forth the alleged circumstances of the underlying violations and default judgments.

115.   The NOVs should show the specific dates, times, and locations of the infractions and should provide identifying information concerning the person to whom the violation was issued.

116.    With that information, Mr. Evans would be better able to demonstrate that he was not the person to whom the violation was issued.

117.    Persons summonsed on NYCTA property present stolen identification to police officers to avoid penalty.

***Named Plaintiff Nathaniel Robinson***

118.    Plaintiff Nathaniel Robinson is a black New York City resident.

119.    He is currently unemployed and subsists on public assistance and food stamps.

120.    In or around early August 2017, Mr. Robinson received notices from DTF dated July 27 and 28, 2017, stating that DTF had applied his New York State tax refunds for the years 2014, 2015, and 2016, totaling $189, to a TAB debt.

121.    After receiving the July 2017 notices, Mr. Robinson went to TAB to inquire about the alleged debt, whereupon he was told that the debt stemmed from a 20-year-old ticket for unsafe riding.

122.    On or about August 31, 2017, Mr. Robinson returned to TAB to request documentation related to the alleged debt, including copies of the underlying NOV and any default judgment issued.

123.    A TAB employee gave Mr. Robinson a status letter listing two "offenses"—one for "unsafe riding" and another for "smoking"—and stating a total amount due of $418.78.

124.    The status letter categorized the "unsafe riding" offense in "SWOP" status, meaning that NYCTA had certified the alleged debt to DTF so that tax refunds could be offset pursuant to the Statewide Offset Program, as set forth in NY Tax § 171-f.

125.    The status letter categorized the "smoking" offense as in "judgment" status.

126.    Mr. Robinson asked for copies of the NOVs, but the TAB employee stated that no information or documentation other than the status letter was available.

127.    According to the status letter, the alleged "unsafe riding" offense dates from April 16, 1997 and the alleged "smoking" offense dates from March 13, 2003.

128.    TAB rendered default judgments against Mr. Robinson for both violations in 1997 and 2003, respectively.

129.    Mr. Robinson never received notice that a default judgment would be or had been entered against him for either violation.

130.    Mr. Robinson never received notice that any TAB default judgment against him would be or had been referred to SWOP.

131.    Mr. Robinson had no notice of the TAB default judgments against him until in or around early August 2017, after DTF seized three years' worth of his tax refunds.

132.    On or about November 6, 2017, Mr. Robinson's counsel, on Mr. Robinson's behalf, sent a letter to TAB requesting information and documents pertaining to Mr. Robinson's violations and default judgments.

133.    TAB responded to this request with print-outs similar to the status letters from TAB's computer system—none of which provide sufficient information for Mr. Robinson to challenge the default judgments.

134.    TAB did not provide copies of the NOVs for either of Mr. Robinson's alleged violations or notices pertaining to either default judgment.

135.    On or about November 15, 2017, Mr. Robinson, with the assistance of counsel, submitted requests to vacate the TAB default judgments against him.

136.    By letter dated December 8, 2017, a TAB hearing officer responded to Mr. Robinson stating that Mr. Robinson's failure to respond to the "smoking" NOV had resulted in a default judgment.

137.    The letter indicated that the hearing officer had reviewed the "smoking" NOV that TAB had refused to provide to Mr. Robinson.

138.    In that same letter, the hearing officer requested that Mr. Robinson "submit proof that he is not the person who received the Notice of Violation and proof of where he was at the time the Notice of Violation was issued," thereby requiring Mr. Robinson to rebut a document that he has never seen and TAB repeatedly refused to provide.

139.    By letter dated December 8, 2017, a TAB hearing officer responded to Mr. Robinson stating that Mr. Robinson's failure to respond to the "unsafe riding" NOV had resulted in a default judgment.

140.    The letter indicated that the hearing officer had reviewed the "unsafe riding" NOV that TAB had refused to provide to Mr. Robinson.

141.    In that same letter, the hearing officer requested that Mr. Robinson "submit proof that he is not the person who received the Notice of Violation and proof of where he was at the time the Notice of Violation was issued," thereby requiring Mr. Robinson to rebut a document that he has never seen and TAB repeatedly refused to provide.

142.    The hearing officer requested that TAB "provide documents regarding the judgment" for the "unsafe riding" violation thus indicating that TAB has additional documents relevant to Mr. Robinson's supposed violations and default judgments that TAB repeatedly refused to provide to Mr. Robinson.

143.    In both December 8, 2017 letters, the hearing officer also stated, "When the Respondent failed to answer the Notice of Violation on or before the hearing date, it was deemed that an admission to the charge had been made pursuant to the warning on the Notice of Violation and the mandatory fine was imposed with an additional $25 default penalty.  TAB mailed a Default Decision and Order to the Respondent and advised him that failure to respond within 30 days will result in the assessment of a second $25 default penalty and a judgment will be entered in the Civil Court of the City of New York."

144.    Mr. Robinson had never received any "Default Decision and Order" from TAB regarding these two alleged violations.

145.    TAB's responses further stated, "[t]he granting of this request for additional information will not be considered an adjournment of this matter.  All collection and enforcement proceedings (i.e. garnishment of wages, seizure of bank account, lien on real property) will continue and remain in effect."

146.    On or about June 6, 2018, Mr. Robinson again attempted to obtain relevant documents from TAB, including copies of the NOVs, any notices allegedly provided to Mr. Robinson, and any documents that the hearing officer relied upon.

147.    This time, a TAB employee asked Mr. Robinson to complete an Information Request Form.

148.    Upon receiving the completed Information Request Form, a TAB employee initially told Mr. Robinson that the NOVs for both alleged violations were unavailable for review—likely because the violations were too old.

149.    When pressed, however, a TAB supervisor stated to Mr. Robinson that the hearing officer had reviewed physical copies of the original NOVs.

150.   The TAB supervisor stated to Mr. Robinson that:

- Documents other than NOVs were not available for review;

- Each NOV would cost $10 to view;

- The $10 per-document fee could not be waived for the indigent;

- TAB did not know whether the hearing officer would show Mr. Robinson the relevant documents that the hearing officer would consider at any hearing; and

- Some NOVs may be "too old" to access.

151.   The TAB supervisor stated to Mr. Robinson that none of these aforementioned policies were written, but are the customs and practices of TAB.

152.   Mr. Robinson cannot afford to pay $10 per document to review the documents considered by the hearing officer.

153.   TAB has provided Mr. Robinson with no additional information and his default judgments have not been vacated.

154.   According to a TAB status letter dated January 18, 2019, Mr. Robinson still owes NYCTA and TAB $475.51 for the alleged "smoking" and "unsafe riding" violations.

155.   Upon the filing of Mr. Robinson's future tax returns, any refund due to him will be subject to offset because the outstanding alleged debts due to NYCTA have not been satisfied.

156.   Mr. Robinson cannot meaningfully contest the default judgments or the related tax refund offsets because TAB has repeatedly denied him access—through the application of its customs, policies, and practices—to copies of the NOVs and other documents setting forth the alleged circumstances of the underlying violations and default judgments.

157.    For example, the NOVs ought to show the specific dates, times, and locations of the infractions and might provide identifying information concerning the person to whom the violation was issued.

158.    With that information, Mr. Robinson could demonstrate that he was not the person to whom the violation was issued.

159.    Persons summonsed on NYCTA property present stolen identification to police officers to avoid penalty.

## CLASS ALLEGATIONS

160.    The Named Plaintiffs bring this class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of a class defined as follows:  All persons against whom TAB has entered or will enter a default judgment and for whom TAB has not provided or will not provide access to the notice of violation, notice of default judgment, or any other documents necessary for the class member to challenge the judgment and its enforcement.

161.    The class is so numerous that joinder of all members is impracticable.

162.    The class contains thousands of persons, as the Report stated that TAB had more than 1.7 million outstanding judgments as of December 31, 2015.

163.    There are numerous questions of law and fact common to the class, including:

(a)    whether TAB preserves documents, such as copies of NOVs, necessary for class members to contest default judgments and their enforcement;

(b)    whether TAB has customs, policies, and practices pursuant to which it refuses to provide copies of NOVs and other documents to class members seeking to contest default judgments and their enforcement;

(c)     whether TAB has customs, policies, and practices pursuant to which it

charges $10 to view a copy of a NOV, and the fee is not waivable for indigence;

(d)     whether TAB certifies judgments to DTF for tax refund offset even when

the documents concerning the alleged underlying violation of the Rules of

Conduct have been destroyed or cannot otherwise be accessed; and

(e)     whether TAB has entered or will enter a default judgment.

164.   The Named Plaintiffs' claims are typical of the claims of the members of the

classes as all members of the classes are similarly affected by Defendant's wrongful conduct

specified above in violation of 42 U.S.C. Section 1983.

165.   Declaratory and injunctive relief are appropriate with respect to the class as a

whole, because Defendants have acted on grounds applicable to the class.

166.   The Named Plaintiffs serving as class representatives will advance the interests of

the absent class members.

167.   The Named Plaintiffs have retained counsel experienced in civil rights and class

action litigation.

168.   The National Center for Law and Economic Justice has litigated numerous cases

seeking to enforce the due process rights of low-income people in federal district courts

throughout the country and the United States Supreme Court, including through class action.

169.   New Economy Project has litigated numerous cases in federal district courts,

including class actions, seeking to enforce the rights of low-income people and people of color.

170.   Drinker Biddle & Reath LLP is a national law firm with a leading class action

practice that has extensive experience litigating complex class actions.

171.     The law firm of Jerry Hartman has extensive experience litigating class actions and pattern and practice cases throughout the United States.

## FIRST CAUSE OF ACTION
### Due Process Violation – Deprivation of Notice and Opportunity to be Heard

172.     Plaintiffs repeat and reiterate, and incorporate herein by reference, Paragraphs 1 through 171 as if the same were set forth fully and at length herein.

173.     Defendants have violated the rights of the Named Plaintiffs and the class that they represent by denying them their right to procedural due process under the Fourteenth Amendment to the United States Constitution by (1) entering default judgments against them without adequate notice of the transit violation, the default penalties, and/or the judgment itself; (2) denying them meaningful opportunity to contest the transit violation, the default penalties, default judgment, and/or the tax refund offset; and (3) refusing access to documents necessary to challenge any default judgment.

## SECOND CAUSE OF ACTION
### Due Process Violation – Refusal to Waive Fees based Upon Indigence

174.     Plaintiffs repeat and reiterate, and incorporate herein by reference, Paragraphs 1 through 173 as if the same were set forth fully and at length herein.

175.     Defendants have violated the rights of the Named Plaintiffs and the class that they represent by denying them their right to procedural due process under the Fourteenth Amendment to the United States Constitution by its policy, custom, and practice to not waive fees for reviewing documents in TAB's possession that are necessary to contest the default judgments entered against them, despite Plaintiffs' indigence.

## THIRD CAUSE OF ACTION
### Due Process Violation – Deliberate Indifference to Constitutional Rights

176.    Plaintiffs repeat and reiterate, and incorporate herein by reference, Paragraphs 1 through 175 as if the same were set forth fully and at length herein.

177.    Defendants have violated the rights of the Named Plaintiffs and the class that they represent by denying them their right to procedural due process under the Fourteenth Amendment to the United States Constitution by their deliberate indifference to the fact that its formal policies, customs and practices will result in the denial of constitutional rights.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

1.    Certify that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2.    Declare that Defendant NYCTA has violated Named Plaintiffs' rights, and the rights of class that they represent, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

3.    Enter an injunction (i) prohibiting NYCTA from certifying TAB default judgments to DTF for tax refund offset or otherwise enforcing TAB default judgments until such time as it has developed procedures to provide class members adequate notice and an opportunity to be heard; and (ii) barring NYCTA from certifying TAB judgments to DTF in cases where it does not possess and/or cannot obtain a copy of the original Notice of Violation, Default Decision and Order, or other documents that are in the record;

4.    Enter an Order awarding the Named Plaintiffs and the class that they represent litigation costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

5.      Enter an Order awarding the Named Plaintiffs a refund of their improperly seized tax refunds and/or garnished wages; and

6.      Enter an Order awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York            Respectfully submitted,
       February 13, 2019

                                **DRINKER BIDDLE & REATH LLP**

                                By: _____

                                   Clay J. Pierce
                                   Andrew L. Van Houter
                                   Justin M. Ginter

                                1177 Avenue of the Americas
                                41st Floor
                                New York, NY 10036
                                212-248-3140
                                Clay.Pierce@dbr.com
                                Andrew.VanHouter@dbr.com
                                Justin.Ginter@dbr.com

                                Marc Cohan
                                Katharine Deabler-Meadows
                                Claudia Wilner
                                **NATIONAL CENTER FOR LAW**
                                **AND ECONOMIC JUSTICE, INC.**
                                275 Seventh Avenue, Suite 1506
                                New York, New York 10001
                                (212) 633-6967

                                Susan Shin
                                Raúl Carrillo
                                **NEW ECONOMY PROJECT**
                                121 W. 27th St., Suite 804
                                New York, NY 10001
                                (212) 680-5100

                                    -and-

Gerald S. Hartman*
**LAW OFFICES OF GERALD S. HARTMAN**
3607 Whispering Lane
Falls Church, VA 22041
(703) 919-0423
*\* Seeking Admission Pro Hac Vice*