UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHANIEL ROBINSON and DAVID EVANS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>            *-against-*<br><br>NEW YORK CITY TRANSIT AUTHORITY; PATRICK J. FOYE, in his official capacity as Chairman of the New York City Transit Authority; and ANDY BYFORD, in his official capacity as President of the New York City Transit Authority,<br><br>                    Defendants. | No. Civ. 1:19-cv-01404-AT-BCM<br>**ECF Case**<br><br><br>**FIRST AMENDED COMPLAINT** |

## INTRODUCTION

1.      This civil rights class action challenges the lack of due process afforded individuals by Defendant New York City Transit Authority ("NYCTA") in connection with default judgments for alleged violations of transit rules of conduct.

2.      NYCTA fails to provide adequate notice of these default judgments to many members of the putative class, including the Named Plaintiffs, who first learn that NYCTA obtained default judgments against them when they receive notice that their state tax refunds have been or will be offset to enforce the judgments.

3.      NYCTA obtained the default judgments against Named Plaintiffs without their knowledge more than a decade ago and, in some instances, more than twenty years ago.

4.      NYCTA enforces the default judgments against Named Plaintiffs and putative class members even when it knows it sent required notices concerning the judgments to incorrect addresses and that Named Plaintiffs and putative class members did not receive the notices.

5.      NYCTA enforces the default judgments against the Named Plaintiffs and putative class members even when it no longer possesses the underlying documentation, including the Notice of Violation ("NOV") on which the judgment is based.

6.      Because Defendants fail and refuse to provide Named Plaintiffs and putative class members the most basic information concerning the alleged violations, including copies of any relevant NOV, Named Plaintiffs and putative class members cannot effectively contest the default judgments and, as pertains to Named Plaintiffs and many class members, the seizures of their tax refunds.

7.      Moreover, Defendants impose unreasonably high standards for vacating judgments, which further impedes Named Plaintiffs and putative class members from contesting the default judgments. Defendants' customs, policies, and practices with respect to obtaining and enforcing default judgments, including for some putative class members through tax refund offsets, have affected thousands of individuals.

8.      The seizure of tax refunds, even if small in amount, adversely impacted Named Plaintiffs and adversely impacts many class members who have little or no income.

9.      Defendants' customs, policies, and practices with respect to obtaining and enforcing default judgments violate the rights of Named Plaintiffs and the punitive class under the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

## PARTIES

10. Named Plaintiff Nathaniel Robinson resides in Bronx, New York.

11. Named Plaintiff David Evans resides in Brooklyn, New York.

12. Defendant NYCTA, a municipal board, with an office in New York, New York, is a public benefit corporation established by the laws of the State of New York.

13. Defendant Patrick J. Foye, Acting Chairman of NYCTA, is sued in his official capacity.

14. Defendant Andy Byford, President of NYCTA, is sued in his official capacity.

15. Defendants are responsible for the operation of the Transit Adjudication Bureau ("TAB").

16. Defendant Byford appoints, and NYCTA compensates, the TAB hearing officers who preside at hearings and adjudicate alleged transit rule violations.

17. TAB remits any monies it collects for alleged transit rule violations to NYCTA.

## JURISDICTION AND VENUE

18. This action is brought to enforce federal constitutional rights pursuant to 42 U.S.C. § 1983.

19. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(4).

20. Venue lies within this District pursuant to 28 U.S.C. § 1391(b).

## STATUTORY AND REGULATORY SCHEME

21. NYCTA operates the New York City Bus, the New York City Subway, and the Staten Island Railway. *See* N.Y. Pub. Auth. Law § 1202(1); http://web.mta.info/nyct/facts/about_us.htm.

22. NYCTA promulgates Rules of Conduct ("Rules") for those who use the New York City's transit system. *See* N.Y. Pub. Auth. Law §§ 1203-a(3), 1204(5-a).

23.     New York City police officers and transit inspectors issue citations for violations of these Rules, which may be either a criminal court summons or a NOV.  *See* N.Y. Pub. Auth. Law § 1209-a.

24.     NOVs are adjudicated in administrative hearings conducted by TAB.  *See* N.Y. Pub. Auth. Law § 1209-a.

25.     A NOV shall be served by delivering the notice within the state to the person to be served.  *See* N.Y. Pub. Auth. Law § 1209-a(5).

26.     A NOV "shall contain information advising the person charged of the manner and the time within which such person may either admit or deny the offense charged in the notice." *See* N.Y. Pub. Auth. Law § 1209-a(5).

27.     A NOV must advise the person that a failure to respond to the notice "*may* result in a default decision and order being entered against such person, and the imposition of supplemental penalties[.]"  *See* N.Y. Pub. Auth. Law § 1209-a(5) (emphasis added).

28.     An individual who fails to respond to a NOV within the time specified, or responds but fails to appear at the hearing date, is deemed to have admitted liability, providing grounds for entry of a default decision and an order and imposition of a penalty.  *See* N.Y. Pub. Auth. Law § 1209-a(6).

29.     Prior to 2016, TAB allowed individuals who had missed their hearing date to contest an NOV on the merits within 30 days of the initial hearing date.

30.     In 2016, however, TAB changed its customs, policies and practices to eliminate this grace period in order to obtain more default judgments and collect more penalties.

31.     TAB's guidelines governing its proceedings, adopted pursuant to N.Y. Pub. Auth. Law § 1209-a(4)(d) (the "Guidelines"), permit the imposition of a $25 default penalty if the

individual fails to appear at TAB on his or her designated initial hearing date. *See* Guidelines § 4.2(a).

32.     The Guidelines also permit the imposition of a second $25 default penalty if the individual failed to appear at TAB on his or her designated hearing date and is still in default more than 30 days afterwards. *See* Guidelines § 4.2(b).

33.     Any judgment rendered by TAB may be entered in the Civil Court of the City of New York. N.Y. Pub. Auth. Law § 1209-a(9)(b).

34.     Before a default judgment may be entered, TAB must have attempted to notify the respondent by first-class mail of the default decision and order and the penalty imposed, that a judgment will be entered in the Civil Court of the City of New York, and that the entry of such judgments may be avoided by requesting a stay of default for good cause shown and either requesting a hearing or entering a plea pursuant to TAB's rules within 30 days of the mailing of such notice. N.Y. Pub. Auth. Law § 1209-a(9)(c); *see also* Guidelines 3.8(b).

35.     Under the New York Civil Practice Law and Rules, a money judgment may be enforced for 20 years, and accrues interest from the date of entry at the rate of nine percent per year. *See* CPLR §§ 211(b), 5003, 5004.

36.     New York law requires that NYCTA, prior to certifying a judgment to the Statewide Offset Program ("SWOP"), must have indicated that it:

> has notified the taxpayer in writing, or has made a reasonable attempt to so notify the taxpayer at the taxpayer's last address known to such state agency (i) that the debt, which is clearly identified as to amount and nature, is past-due and unless paid within thirty days thereafter, would be referred to the department of taxation and finance to be offset against an overpayment; (ii) that state law permits the offset of certain overpayments against such debts; (iii) that the taxpayer may request a review of the proposed referral for offset by contacting the state agency at a telephone number or an address disclosed in the notice; and

(iv) that the taxpayer may present, to the state agency, written evidence and arguments in support of his defense to the proposed referral or may appear at a scheduled conference with the state agency to present oral arguments and written and oral evidence in support of such defense

NY Tax Law § 171-f.

37. New York law requires that NYCTA, prior to certifying a judgment to SWOP, send a notice ("SWOP notice") to the respondent concerning the impending tax refund offset. *See* N.Y. Tax Law §171-f(3)(c).

38. "A copy of each notice of violation . . . shall be filed and retained" by TAB. *See* N.Y. Pub. Auth. Law § 1209-a(5).

39. The Guidelines also require that a copy of each NOV be filed and retained by TAB. Guidelines § 2.1.

40. The Guidelines, however, permit TAB to destroy records after four months, even though TAB seeks to enforce judgments for NOVs years later. *See* Guidelines § 1.8(a).

### FACTS COMMON TO THE CLASS

**A. TAB enforces default judgments, including by offsetting tax refunds, without notice and with knowledge that it has inaccurate address information.**

41. New York law requires that an NOV be delivered within the state to the person charged of a violation and that TAB notify any such person of a default decision by first-class mail before a default judgment may be entered. *See* N.Y. Pub. Auth. Law §§ 1209-a(5), 1209-a(9)(c); *see also* Guidelines 3.8(b).

42. TAB has a custom, policy, and practice of enforcing default judgments against a respondent even when it knows that the address it has for the respondent in its database is incorrect and that the respondent therefore did not receive a required notice from TAB.

43. TAB has a custom, policy, and practice of referring default judgments to SWOP even when it knows that the address it has for the respondent in its own database is incorrect and that the respondent did not receive the required notice from TAB concerning the impending tax refund offset.

44. Many putative class members do not receive the notices they are entitled to under New York law.

45. TAB has admitted that it does not require the NOVs it adjudicates to identify an individual's address.

46. Before commencing enforcement efforts, including but not limited to referring a default judgment to SWOP, TAB does not undertake any reasonable efforts to ensure that the address it has for a respondent in its database is correct.

47. TAB has admitted that it has a custom, policy and practice of enforcing and collecting on default judgments even when TAB knows that the address it has for a respondent in its database is incorrect and that the respondent has therefore not received TAB's notices concerning the default judgment and its enforcement.

48. TAB has known since at least 2016 that it was enforcing default judgments against individuals who never received required notices.

49. In 2016, the New York State Comptroller audited TAB's collection practices and released a report (the "Report") that stated approximately 40% of the random sample of NOVs reviewed for the Report contain inaccurate address information.

50. In the Report, the Comptroller recommended that TAB develop processes to identify accurate address information, such as by interfacing with New York's DMV database.

51. TAB did not implement the Comptroller's recommendation.

52.     TAB also has access to LexisNexis public records, but does not use LexisNexis to search for accurate address information, though TAB's internal policy manuals identify LexisNexis as a resource for such information.

53.     Even in instances when TAB receives an updated address for a respondent in connection with one NOV, it frequently fails to update the respondent's address information in connection with other NOVs that respondent may have.

54.     Accurate address information is not part of TAB's criteria for referral to SWOP.

55.     Instead, TAB uses an automated system that refers default judgments to SWOP whenever TAB has a valid Social Security Number associated with the judgment and $25 or more is due.

56.     TAB's custom, policy and practice is to refer default judgments to SWOP even when required notices of the impending offset have been returned as undeliverable or the system notes that address information for the respondent is incorrect.

57.     Thousands of putative class members do not know that TAB has entered a default judgment against them until DTF offsets their tax refunds.

**B.     TAB does not provide adequate notice of potential penalties and collection efforts.**

58.     TAB is the agency responsible for drafting and designing the NOV.

59.     TAB does not include on the NOV that failure to appear on the hearing date may subject the individual to interest on a judgment entered against him or her, which accrues at the statutory rate of 9% per annum.

60.     TAB does not include on the NOV that a default judgment may lead to an additional $50 in penalties.

61.     TAB does not include on the NOV that a default judgment may lead to the offset of the respondent's state tax refund.

**C.     TAB enforces default judgments without retaining the underlying documentation.**

62.     TAB's custom, policy and practice is to commence enforcement efforts without first confirming that TAB possesses the underlying NOV.

63.     TAB's current database, known as TABIS, is not programmed to ensure TAB actually has the underlying NOV before TAB automatically commences any stage of the enforcement of a default judgment.

64.     TAB's document retention policy states that it retains NOVs for 10 years.

65.     TAB enforces default judgments, including through offset of tax refunds, for a minimum of 20 years.

66.     TAB does not have and cannot get the underlying NOV for many of the default judgments it enforces, including through tax refund offset.

67.     TAB's custom, policy and practice of enforcing default judgments when it does not have the underlying NOV results in individuals being denied any meaningful opportunity to vacate a default judgment.

68.     When an individual challenges a default judgment for which the underlying NOV is unavailable, TAB's customs, policies and practices unreasonably place the burden on the individual to come forward with evidence to rebut alleged documents that the individual has never seen.

**D.     TAB refuses to provide necessary documents or waive cost-prohibitive fees.**

69.     Even where TAB has maintained original or scanned copies of documents such as a NOV, TAB does not consistently produce documents to persons requesting them.

70.     TAB's custom, policy, and practice is to provide a "status letter" and no other information to persons who have default judgments and request copies of their records.

71.     The "status letter" lists only (i) a violation number; (ii) the purported issue date; (iii) the "status" of the violation; (iv) the amount purportedly due; and (v) a non-descript summary of the offense, such as "littering, urinating, defecating, spitting, unauth trash removal."

72.     The "status letter" does not contain sufficient information to demonstrate that a default judgment was entered against the correct person upon proper notice.

73.     The "status letter" cannot confirm whether the fields on the NOV setting forth the time and date of the hearing, as well as other fields, were in fact legibly filled out by the citing officer or transit inspector.

74.     The "status letter" does not contain information demonstrating when and how—including to what address—TAB purportedly provided the person with notice of a default decision and order.

75.     The "status letter" does not contain information demonstrating when and how—including to what address—TAB purportedly provided the person with notice of a default judgment.

76.     The "status letter" does not contain information demonstrating when and how—including to what address—TAB purportedly provided the person with notice of the SWOP referral.

77.     Even when a respondent specifically requests the NOV and other documents, TAB has a custom, policy, and practice of refusing to provide individuals with copies of NOVs or of providing them on cost-prohibitive terms which can amount to a substantial portion of the very judgment the requesting person is attempting to challenge.

78.     Prior to Named Plaintiffs bringing this lawsuit, TAB's custom, policy and practice was to charge $10 per document.

79.     After the commencement of this lawsuit, TAB revised its written policy to charge $1 for a copy of an NOV, but it did not change its policy with regards to the fees charged for copies of other documents requested by respondents documents, such as the requisite notices.

80.     TAB admits that its decision to revise its written policy was arbitrary and not based on any empirical analysis of actual costs.

81.     Moreover, despite the change in written policy, TAB's continuing custom and practice is to charge people $10 per document, including $10 per NOV.

82.     TAB's custom, policy, and practice is to refuse to waive the document fees under any circumstances, even if a person requesting the document is indigent.

83.     TAB has no publicly available guidelines regarding the production of documents upon request.

84.     NOVs issued since 2008 are stored on the TABIS system, and NOVs issued between 2002 and 2008, if not already destroyed, are stored on CDs.

85.     NOVs issued before 2002, if not already destroyed, are stored offsite on microfiche.

86.     TAB internal guidelines explain how to print out NOVs from TABIS to provide them to individuals who request them, but TAB's internal guidelines do not explain how to provide NOVs that are so old that they do not appear on TABIS, nor do they explain how to provide copies of other documents such as the requisite notices.

87.     When individuals request copies of older NOVs, TAB employees tell them that the NOVs are not available or that the individual cannot request a copy of the NOV without first scheduling a hearing to vacate the default judgment.

88.     TAB's custom, policy, and practice is to refuse to send copies of NOVs or provide other information related to default judgments to individuals who request such documentation and information from TAB by mail.

89.     TAB's custom, policy, and practice is to impose unnecessary and unduly burdensome requirements on individuals who request such documentation and information from TAB by mail, including requiring individuals to send in copies of their Social Security card and other identification, such as a benefits card, to TAB before TAB will send any of the requested documentation or information.

90.     TAB's customs, policies, and practices result in the denial of information necessary to challenge the default judgments.

91.     By the time many putative class members' tax refunds are seized by DTF, the putative class members have no way to challenge the offset because TAB either has already destroyed all the evidence that those persons could have used to support their claims and/or defenses or refuses to provide such evidence.

## THE NAMED PLAINTIFFS

### *Named Plaintiff David Evans*

92.     Named Plaintiff David Evans is a black New York City resident and Marine Corps veteran.

93.     Mr. Evans, who formerly was homeless, worked as a delivery person before getting injured.

94.     Because of his injury, Mr. Evans currently is unemployed and subsists on Social Security Disability Insurance.

95.     In or around November 2016, Mr. Evans received two separate notices from TAB, both dated November 17, 2016, stating that TAB was referring two outstanding TAB violations to DTF for tax refund offset.

96.     The combined amount due on the two alleged violations was $433.83.

97.     The November 2016 TAB offset notices were the first notices that Mr. Evans received informing him of these two alleged violations.

98.     The TAB offset notices state that "[i]f you wish to dispute this matter, you must appear at TAB in person at the address listed above" and that "[y]ou will be given the opportunity to present both written and oral evidence and arguments in support of your defense to the default judgment."

99.     In response to the TAB offset notices, Mr. Evans visited TAB three times in or around late 2016 and requested an opportunity to dispute the default judgments.

100.    On Mr. Evans' first two visits, TAB turned him away without an opportunity to challenge the default judgments.

101.    During Mr. Evans' third visit, Mr. Evans appeared before a TAB hearing officer.

102.    The hearing officer stated that because Mr. Evans had failed to respond to notices relating to the alleged violations, he was liable for the fines assessed and that, because he was working at that time, his wages would be garnished.

103.    The hearing officer did not provide Mr. Evans with a written decision or any documentation pertaining to the alleged violations or the default judgments rendered by TAB.

104.     In or about April 2017, Mr. Evans received a letter from DTF stating that his wages would be garnished.

105.     Believing that the threatened garnishment stemmed from the TAB default judgments, Mr. Evans went to TAB on or about April 19, 2017 to request information.

106.     A TAB employee provided Mr. Evans only a "status letter" dated April 19, 2017, listing ten "offenses" with a total amount due of $1,904.63 and that categorized three of the offenses as "written off" and the remaining seven offenses as "SWOP."

107.     On or about August 17, 2017, Mr. Evans again went to TAB to request information related to the default judgments.

108.      A TAB employee printed out a "status letter" dated August 17, 2017 that listed the same ten violations as in the April 19th letter but a higher total amount due of $1,962.16.

109.     The status letters state that all but one of the alleged violations date from between January 1999 and December 2001 and that one alleged violation dates from December 2005.

110.     At the time of all of the alleged violations, Mr. Evans was homeless and indigent, and sleeping at homeless shelters where identity theft was a frequent occurrence.

111.     Mr. Evans requested copies of the original NOVs purportedly served upon him, but the TAB employee stated that the only information available was the status letter.

112.     Mr. Evans also requested from the TAB employee records from his 2016 appearance before the TAB hearing officer, such as a transcript and a copy of the decision, but was told that no such information was available and that TAB had no record of his appearance before the hearing officer.

113.     TAB had already entered default judgments against Mr. Evans for all ten alleged violations.

114. Mr. Evans never received notice from TAB that a default judgment would be or had been entered against him for any of the alleged violations.

115. On or about November 6, 2017, Mr. Evans' counsel, on Mr. Evans' behalf, sent a letter to TAB requesting information and documents pertaining Mr. Evans' alleged violations and default judgments.

116. On or about December 15, 2017, TAB responded to the November 6, 2017 request for information and documents by sending only another status letter.

117. On or about November 15, 2017, Mr. Evans' counsel, on Mr. Evans' behalf, submitted requests to vacate the ten TAB default judgments.

118. On or about January 3, 2018, TAB provided responses to seven of the default judgments, by stating that TAB was vacating one (Violation No. 083504154), requesting more information concerning two (NOV Nos. 072881849 and 081014396) and denying the request as to four (Violation Nos. 087001760, 081031812, 096387500 and 083140155).

119. In vacating the default judgment for Violation No. 083504154, the TAB hearing officer stated that "[t]he NOV is not legally sufficient to establish a prima facie case" because "[t]he NOV image…is illegible and the details of the violation cannot be ascertained," thus demonstrating that TAB has documents that it repeatedly refused to provide to Mr. Evans.

120. On September 28, 2016, according to TAB's records, TAB mailed a SWOP notice based on Violation No. 083504154 to Mr. Evans, but the notice was returned to TAB as undeliverable on October 31, 2016.

121. On December 29, 2016, according to TAB's records, TAB nevertheless referred the default judgment based on Violation No. 083504154 to SWOP, and subsequently collected $409.24 from Mr. Evans' tax refunds.

122. TAB did not provide Mr. Evans with a copy of the NOV for NOV No. 081031812 until after Named Plaintiffs commenced this lawsuit.

123. TAB admitted at deposition that the NOV for NOV No. 081031812 is illegible and does not establish a *prima facie* case.

124. The TAB hearing officer who reviewed Mr. Evans' request to vacate the default judgment based on NOV No. 081031812 nevertheless denied his request.

125. Though TAB has admitted that the underlying NOV is illegible, TAB has neither vacated the default judgment based on NOV No. 081031812 nor dismissed the underlying NOV. TAB has also not returned to Mr. Evans any of the money it took from him for this default judgment.

126. On September 28, 2016, according to TAB's records, TAB mailed a SWOP notice based on NOV No. 081031812 to Mr. Evans prior to seizing his tax refunds, but the notice was returned to TAB on October 31, 2016 as undeliverable.

127. On December 29, 2016, according to TAB's records, TAB nevertheless referred the default judgment based on NOV No. 081031812 to SWOP.

128. In responding to Mr. Evans' request to vacate the default judgment for NOV No. 072881849, the TAB hearing officer stated *both* that "the NOV establishes a prima facie case" *and* that "the TAB copy of the Notice of Violation has been archived and is not currently available for review."

129. The TAB Hearing Officer further ordered that TAB retrieve the NOV for NOV No. 072881849 "from the archive" and that Mr. Evans appear again no earlier than within 60 days with evidence to rebut a NOV that he has never seen and that TAB repeatedly refused to provide.

130.    TAB has since admitted that it does not possess the NOV for NOV No. 072881849, but has neither vacated that default judgment nor dismissed the underlying NOV. TAB has also not returned to Mr. Evans any of the money it took from him for this default judgment.

131.    On September 28, 2016, according to TAB's records, TAB mailed a SWOP notice based on NOV No. 072881849 to Mr. Evans prior to seizing his tax refunds, but the notice was returned to TAB on November 3, 2016 as undeliverable.

132.    On December 29, 2016, according to TAB's records, TAB nevertheless referred the default judgment based on NOV No. 072881849 to SWOP.

133.    Similarly, in responding to Mr. Evans' request to vacate the default judgment for NOV No. 081014396, the TAB hearing officer described the allegations in the NOV *and stated* that "the TAB copy of the Notice of Violation has been archived and is not currently available for review."

134.    The TAB Hearing Officer further ordered that TAB retrieve the NOV for NOV No. 081014396 "from the archive" and that Mr. Evans appear again no earlier than within 60 days with evidence to rebut a NOV that he has never seen and that TAB repeatedly refused to provide.

135.    TAB has also failed to produce the NOV for NOV No. 081014396, but has neither vacated that default judgment nor dismissed the underlying NOV. TAB has also not returned to Mr. Evans any of the money it took from him for this default judgment.

136.    With regards to NOV Nos. 072881849 and 081014396 and Violation Nos. 087001760, 081031812, 096387500 and 083140155, the TAB hearing officer also stated, "When the Respondent failed to answer the NOV on or before the hearing date, it was deemed that an

admission to the charge had been made pursuant to the warning on the NOV and the mandatory fine was imposed with an additional $25 penalty and TAB mailed a First Notice of Default to the Respondent. When the Respondent failed to respond to the First Notice of Default within 30 days, a second $25 penalty was assessed and a Notice of Impending Judgment was mailed to the Respondent."

137.    Mr. Evans never received any "First Notice of Default" from TAB regarding these alleged NOV Nos. or Violations Nos.

138.    Mr. Evans never received any "Notice of Impending Judgment" from TAB regarding these alleged NOV Nos. or Violations Nos.

139.    TAB's written responses to each of the violations further stated, "This request for additional information will not be considered an adjournment of this matter. All collection and enforcement proceedings (i.e. garnishment of wages, seizure of bank account, lien on real property) will continue and remain in effect."

140.    The TAB hearing officer denied the requests to vacate the remaining four default judgments (Violation Nos. 087001760, 081031812, 096387500 and 083140155), despite Mr. Evans' statements that he did not receive the NOVs, on the ground that Mr. Evans "submit[ted] no documentation establishing that any of the information contained in the NOV is incorrect," thereby faulting Mr. Evans for failing to rebut documents that he had never seen and TAB repeatedly refused to provide to him.

141.    TAB did not provide Mr. Evans with a copy of the NOV for Violation Nos. 087001760, 081031812, 096387500 and 083140155 until after Named Plaintiffs commenced this lawsuit.

142.     Three of these NOVs—for Violation Nos. 087001760, 081031812, and 083140155—are blurry and largely illegible. On or about February 21, 2018, TAB responded to Mr. Evans' request for more information concerning the remaining three default judgments, based on NOV Nos. 084996551, 086408071, and 085650988.

143.     In response to each of these violations, the TAB hearing officer stated, "When the respondent failed to answer the NOV (either in person or by mail) on or before the hearing date, a $25 default penalty was assessed pursuant to the warning on the NOV, and a first notice of default was sent to the respondent.  When the respondent failed to answer the notice of default within the next 30 days a second $25 default penalty was assessed and a notice of impending judgment default was mailed to respondent."

144.     Mr. Evans never received any "First Notice of Default" from TAB regarding these alleged violations.

145.     Mr. Evans never received any "Notice of Impending Judgment" from TAB regarding these alleged violations.

146.     TAB's February 21, 2018 responses to NOV Nos. 084996551, 086408071, and 085650988 referred to the contents of the NOVs and directed Mr. Evans to appear at TAB in person and bring information "in support of his claim that he does not believe the NOV was issued to him," even though TAB repeatedly refused to provide him with a copy of the NOVs.

147.     TAB's responses to each of these violations further stated, "This request for additional information will not be considered an adjournment of this matter. All collection and enforcement proceedings (i.e. garnishment of wages, seizure of bank account, lien on real property) will continue and remain in effect."

148.    According to TAB's records, TAB obtained a default judgment based on NOV No. 084996551 against Mr. Evans on August 23, 2001.

149.    On November 18, 2008, according to TAB's records, TAB flagged the address it had for Mr. Evans in its database under NOV no. 084996551 as a "bad address."

150.    TAB therefore knew that Mr. Evans would not have received any notices mailed to him at this address on or after November 18, 2000.

151.    According to TAB's records, TAB obtained a default judgment based on NOV No. 085650988 against Mr. Evans on July 30, 2001.

152.    On November 14, 2008, according to TABIS records, TAB flagged the address it had for Mr. Evans in its database under NOV No. 085650988 as a "bad address."

153.    TAB therefore knew that Mr. Evans would not have received any notices mailed to him at this address on or after November 14, 2008.

154.    On or about April 20, 2018, Mr. Evans visited TAB again, and again requested that TAB provide relevant documents, including copies of the NOVs, any notices allegedly provided to Mr. Evans, any documents that the hearing officer relied upon in requesting further information from Mr. Evans to adjudicate the requests to vacate the default judgments, and information concerning which alleged violations have caused tax refund offsets and the amount of such offsets.

155.    TAB refused to tell Mr. Evans what documents it had available and demanded that Mr. Evans pay $10 to review each document, which could total as much as $400 for the requested documents and $100 for the NOVs.

156.    Mr. Evans did not have the $10 needed to review one NOV, let alone the $100 necessary to review all ten of them.

157.    On or about May 16, 2018, Mr. Evan's counsel visited TAB in an attempt to

obtain documents on Mr. Evans' behalf.

158.    A TAB employee stated that:

- Only NOVs could be provided;

- Each NOV would cost $10 to view;

- The $10 per document fee could not be waived for the indigent;

- It was up to the hearing officer whether to show Mr. Evans the relevant
  documents that the hearing officer would consider at any hearing;

- It was up to the hearing officer whether to adjourn a hearing if the hearing officer
  decided to provide Mr. Evans the relevant documents that the hearing officer
  would consider at any hearing;

-  Some NOVs may be "too old" to access; and

- TAB would not inform counsel which NOVs were actually available because Mr.
  Evans' release form was not notarized.

159.    TAB informed counsel that <u>none</u> of these aforementioned policies were written

and that TAB does not "have written policies for this sort of thing"; rather, this was TAB's

custom, policy, and practice with respect to requests for TAB records.

160.    TAB has provided Mr. Evans with no additional information and his default

judgments have not been vacated.

161.    Without viewing any of these documents, Mr. Evans cannot prepare a meaningful

challenge and present meritorious defenses to any TAB default judgments.

162.    Indeed, TAB continued to enforce all of the remaining default judgments though

TAB would not provide him with copies of the underlying NOVs.

163.    In 2018, Mr. Evans' entire tax refund for the tax year 2017 was offset due to TAB

debts.

164.     Part of the offset appears to have been for Violation No. 083504154, which TAB dismissed in January 2018, as stated above, but TAB has not returned the money offset – more than $400 – to Mr. Evans.

165.     According to a TAB status letter dated January 18, 2019, Mr. Evans still owes NYCTA and TAB $1,293.06 for the nine alleged violations that TAB did not dismiss.

166.     Upon the filing of Mr. Evans' future tax returns, any refund due to him will be subject to offset because the outstanding alleged debts due to NYCTA have not been satisfied.

167.     Mr. Evans cannot meaningfully contest the default judgments or the related tax refund offsets because TAB has repeatedly denied him access—through the application of its customs, policies, and practices—to copies of the NOVs and other documents setting forth the alleged circumstances of the underlying violations and default judgments.

168.     The NOVs should show the specific dates, times, and locations of the infractions and should provide identifying information concerning the person to whom the violation was issued.

169.     With that information, Mr. Evans would be better able to demonstrate that he was not the person to whom the violation was issued.

170.     Persons summonsed on NYCTA property present stolen identification to police officers to avoid penalty.

*Named Plaintiff Nathaniel Robinson*

171.     Plaintiff Nathaniel Robinson is a black New York City resident.

172.     He is currently unemployed and subsists on public assistance and food stamps.

173.     In or around early August 2017, Mr. Robinson received notices from DTF dated July 27 and 28, 2017, stating that DTF had applied his New York State tax refunds for the years 2014, 2015, and 2016, totaling $189, to a TAB debt.

174.     After receiving the July 2017 notices, Mr. Robinson went to TAB to inquire about the alleged debt, whereupon he was told that the debt stemmed from a 20-year-old ticket for unsafe riding.

175.     On or about August 31, 2017, Mr. Robinson returned to TAB to request documentation related to the alleged debt, including copies of the underlying NOV and any default judgment issued.

176.     A TAB employee gave Mr. Robinson a status letter listing two "offenses"—one for "unsafe riding" and another for "smoking"—and stating a total amount due of $418.78.

177.     The status letter categorized the "unsafe riding" offense as in "SWOP" status, meaning that NYCTA had certified the alleged debt to DTF so that tax refunds could be offset pursuant to the Statewide Offset Program, as set forth in NY Tax § 171-f.

178.     The status letter categorized the "smoking" offense as in "judgment" status.

179.     Mr. Robinson asked for copies of the NOVs, but the TAB employee stated that no information or documentation other than the status letter was available.

180.     According to the status letter, the alleged "unsafe riding" offense dates from April 16, 1997 and the alleged "smoking" offense dates from March 13, 2003.

181.     TAB rendered default judgments against Mr. Robinson for both violations in 1997 and 2003, respectively.

182.     Mr. Robinson never received notice that a default judgment would be or had been entered against him for either violation.

183.    Mr. Robinson never received notice that any TAB default judgment against him would be or had been referred to SWOP.

184.    Mr. Robinson had no notice of the TAB default judgments against him until in or around early August 2017, after DTF seized three years' worth of his tax refunds.

185.    On or about November 6, 2017, Mr. Robinson's counsel, on Mr. Robinson's behalf, sent a letter to TAB requesting information and documents pertaining to Mr. Robinson's violations and default judgments.

186.    TAB responded to this request with print-outs similar to the status letters from TAB's computer system—none of which provide sufficient information for Mr. Robinson to challenge the default judgments.

187.    TAB did not provide copies of the NOVs for either of Mr. Robinson's alleged violations or notices pertaining to either default judgment.

188.    On or about November 15, 2017, Mr. Robinson's counsel, on Mr. Robinson's behalf, submitted requests to vacate the TAB default judgments against him.

189.    By letter dated December 8, 2017, a TAB hearing officer responded to Mr. Robinson stating that Mr. Robinson's failure to respond to the "smoking" NOV had resulted in a default judgment.

190.    The letter indicated that the hearing officer had reviewed the "smoking" NOV that TAB had refused to provide to Mr. Robinson.

191.    In that same letter, the hearing officer requested that Mr. Robinson "submit proof that he is not the person who received the Notice of Violation and proof of where he was at the time the Notice of Violation was issued," thereby requiring Mr. Robinson to rebut a document that he has never seen and TAB repeatedly refused to provide.  By letter dated December 8,

2017, a TAB hearing officer responded to Mr. Robinson stating that Mr. Robinson's failure to respond to the "unsafe riding" NOV had resulted in a default judgment.

192.     The letter indicated that the hearing officer had reviewed the "unsafe riding" NOV that TAB had refused to provide to Mr. Robinson.

193.     In that same letter, the hearing officer requested that Mr. Robinson "submit proof that he is not the person who received the Notice of Violation and proof of where he was at the time the Notice of Violation was issued," thereby requiring Mr. Robinson to rebut a document that he has never seen and TAB repeatedly refused to provide.

194.     The hearing officer requested that TAB "provide documents regarding the judgment" for the "unsafe riding" violation thus indicating that TAB has additional documents relevant to Mr. Robinson's supposed violations and default judgments that TAB repeatedly refused to provide to Mr. Robinson.

195.     According to TAB's records, TAB obtained a default judgment based on the "unsafe riding" NOV against Mr. Robinson on December 19, 2013, though the date of the NOV was July 18, 1997—16 years earlier.

196.     On April 24, 1997, according to TAB's records, TAB flagged the address it had for Mr. Robinson in its database under the "unsafe riding" NOV as a "bad address."

197.     TAB therefore knew that Mr. Robinson would not have received any notices mailed to him at this address on or after April 24, 1997.

198.     On December 29, 2016, according to TAB's records, TAB nevertheless referred the default judgment based on the "unsafe riding" NOV to SWOP, and collected $189 from Mr. Robinson's tax refunds.

199.     In both December 8, 2017 letters, the hearing officer also stated, "When the Respondent failed to answer the Notice of Violation on or before the hearing date, it was deemed that an admission to the charge had been made pursuant to the warning on the Notice of Violation and the mandatory fine was imposed with an additional $25 default penalty.  TAB mailed a Default Decision and Order to the Respondent and advised him that failure to respond within 30 days will result in the assessment of a second $25 default penalty and a judgment will be entered in the Civil Court of the City of New York."

200.     Mr. Robinson had never received any "Default Decision and Order" from TAB regarding these two alleged violations.

201.     TAB's responses further stated, "[t]he granting of this request for additional information will not be considered an adjournment of this matter.  All collection and enforcement proceedings (i.e. garnishment of wages, seizure of bank account, lien on real property) will continue and remain in effect."

202.     On or about June 6, 2018, Mr. Robinson again attempted to obtain relevant documents from TAB, including copies of the NOVs, any notices allegedly provided to Mr. Robinson, and any documents that the hearing officer relied upon.

203.     This time, a TAB employee asked Mr. Robinson to complete an Information Request Form.

204.     Upon receiving the completed Information Request Form, a TAB employee initially told Mr. Robinson that the NOVs for both alleged violations were unavailable for review—likely because the violations were too old.

205.     When pressed, however, a TAB supervisor stated to Mr. Robinson that the hearing officer had reviewed physical copies of the original NOVs.

206.    The TAB supervisor stated to Mr. Robinson that:

- Documents other than NOVs were not available for review;

- Each NOV would cost $10 to view;

- The $10 per-document fee could not be waived for the indigent;

- TAB did not know whether the hearing officer would show Mr. Robinson the relevant documents that the hearing officer would consider at any hearing; and

- Some NOVs may be "too old" to access.

207.    The TAB supervisor stated to Mr. Robinson that none of these aforementioned policies were written, but are the customs and practices of TAB.

208.    Mr. Robinson cannot afford to pay $10 per document to review the documents considered by the hearing officer.

209.    TAB has provided Mr. Robinson with no additional information and his default judgments have not been vacated.

210.    According to a TAB status letter dated January 18, 2019, Mr. Robinson still owes NYCTA and TAB $475.51 for the alleged "smoking" and "unsafe riding" violations.

211.    Upon the filing of Mr. Robinson's future tax returns, any refund due to him will be subject to offset because the outstanding alleged debts due to NYCTA have not been satisfied.

212.    Mr. Robinson cannot meaningfully contest the default judgments or the related tax refund offsets because TAB has repeatedly denied him access—through the application of its customs, policies, and practices—to copies of the NOVs and other documents setting forth the alleged circumstances of the underlying violations and default judgments.

213.    For example, the NOVs ought to show the specific dates, times, and locations of the infractions and might provide identifying information concerning the person to whom the violation was issued.

214.     With that information, Mr. Robinson could demonstrate that he was not the person to whom the violation was issued.

215.     Persons summonsed on NYCTA property present stolen identification to police officers to avoid penalty.

## CLASS ALLEGATIONS

216.     The Named Plaintiffs bring this class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of a class defined as follows:  All persons against whom TAB has entered or will enter a default judgment and for whom TAB has not provided, will not or cannot provide reasonable access to the notice of violation, notice of default judgment, or any other documents necessary for the class member to challenge the judgment and its enforcement.

217.     The class is so numerous that joinder of all members is impracticable.

218.     The class contains thousands of persons, as the Report stated that TAB had more than 1.7 million outstanding judgments as of December 31, 2015.

219.     There are numerous questions of law and fact common to the class, including:

(a)     whether TAB preserves documents, such as copies of NOVs, necessary for class members to contest default judgments and their enforcement;

(b)     whether TAB has customs, policies, and practices pursuant to which it refuses to provide copies of NOVs and other documents to class members seeking to contest default judgments and their enforcement;

(c)     whether TAB has customs, policies, and practices pursuant to which it charges fees to view copies of relevant underlying documents, and the fee is not waivable for indigence;

(d)    whether TAB certifies judgments to DTF for tax refund offset even when the documents concerning the alleged underlying violation of the Rules of Conduct have been destroyed or cannot otherwise be accessed;

(e)    whether TAB has customs, policies, and practices pursuant to which it obtains and enforces default judgments even though TAB is aware that the addresses to which it purportedly sent notices are wrong addresses; and

(f)    whether TAB has entered or will enter a default judgment

220.    The Named Plaintiffs' claims are typical of the claims of the members of the classes as all members of the classes are similarly affected by Defendant's wrongful conduct specified above in violation of 42 U.S.C. Section 1983.

221.    Declaratory and injunctive relief are appropriate with respect to the class as a whole, because Defendants have acted on grounds applicable to the class.

222.    The Named Plaintiffs serving as class representatives will advance the interests of the absent class members.

223.    The Named Plaintiffs have retained counsel experienced in civil rights and class action litigation.

224.    The National Center for Law and Economic Justice has litigated numerous cases seeking to enforce the due process rights of low-income people in federal district courts throughout the country and the United States Supreme Court, including through class action.

225.    New Economy Project has litigated numerous cases in federal district courts, including class actions, seeking to enforce the rights of low-income people and people of color.

226.    Drinker Biddle & Reath LLP is a national law firm with a leading class action practice that has extensive experience litigating complex class actions.

227.     The law firm of Jerry Hartman has extensive experience litigating class actions and pattern and practice cases throughout the United States.

## FIRST CAUSE OF ACTION
### Due Process Violation – Deprivation of Notice and Opportunity to be Heard

228.     Defendants have violated the rights of the Named Plaintiffs and the class that they represent by denying them their right to procedural due process under the Fourteenth Amendment to the United States Constitution by (1) entering default judgments against them without adequate notice of the transit violation, the default penalties, and/or the judgment itself; (2) denying them meaningful opportunity to contest the transit violation, the default penalties, default judgment, and/or the tax refund offset; and (3) refusing access to documents necessary to challenge any default judgment.

## SECOND CAUSE OF ACTION
### Due Process Violation – Refusal to Waive Fees based Upon Indigence

229.     Defendants have violated the rights of the Named Plaintiffs and the class that they represent by denying them their right to procedural due process under the Fourteenth Amendment to the United States Constitution by its policy, custom, and practice to not waive fees for reviewing documents in TAB's possession that are necessary to contest the default judgments entered against them, despite Plaintiffs' indigence.

## THIRD CAUSE OF ACTION
### Due Process Violation – Deliberate Indifference to Constitutional Rights

230.     Defendants have violated the rights of the Named Plaintiffs and the class that they represent by denying them their right to procedural due process under the Fourteenth Amendment to the United States Constitution by their deliberate indifference to the fact that its formal policies, customs and practices will result in the denial of constitutional rights.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court to:

1.      Certify that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2.      Declare that Defendant NYCTA has violated Named Plaintiffs' rights, and the rights of class that they represent, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

3.      Enter an injunction (i) prohibiting NYCTA from certifying TAB default judgments to DTF for tax refund offset or otherwise enforcing TAB default judgments until such time as it has developed procedures to provide class members adequate notice and an opportunity to be heard; and (ii) barring NYCTA from certifying TAB judgments to DTF in cases where it does not possess and/or cannot obtain a copy of the original Notice of Violation, Default Decision and Order, or other documents that are in the record;

4.      Enter an Order awarding the Named Plaintiffs and the class that they represent litigation costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

5.      Enter an Order awarding the Named Plaintiffs a refund of their improperly seized tax refunds and/or garnished wages; and

6.      Enter an Order awarding such other and further relief as the Court deems just and proper.

**[SIGNATURES ON NEXT PAGE]**

Dated: New York, New York
 October 11, 2019

Respectfully submitted,

**DRINKER BIDDLE & REATH LLP**

By:   */s/ Clay J. Pierce*     

    Clay J. Pierce

    Andrew L. Van Houter
    Justin M. Ginter
    1177 Avenue of the Americas
    41st Floor
    New York, NY 10036
    212-248-3140
    Clay.Pierce@dbr.com

    Marc Cohan
    Katherine Deabler-Meadows
    Claudia Wilner
    **NATIONAL CENTER FOR LAW**
    **AND ECONOMIC JUSTICE, INC.**
    275 Seventh Avenue, Suite 1506
    New York, New York 10001
    (212) 633-6967

    Susan Shin
    **NEW ECONOMY PROJECT**
    121 W. 27th St., Suite 804
    New York, NY 10001
    (212) 680-5100

    Gerald S. Hartman
    **LAW OFFICES OF GERALD S. HARTMAN**
    3607 Whispering Lane
    Falls Church, VA 22041
    (703) 919-0423