UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/16/2024_

| | |
|---|---|
| NATHANIEL ROBINSON, et al.,<br><br>        Plaintiffs,<br><br>    -against-<br><br>NEW YORK CITY TRANSIT AUTHORITY, et al.,<br><br>        Defendants. | 19-CV-1404 (AT) (BCM)<br><br>**REPORT AND RECOMMENDATION TO THE HON. ANALISA TORRES** |

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Nathaniel Robinson and David Evans, suing on behalf of themselves and others similarly situated, alleged that the New York City Transit Authority (NYCTA) and its leaders violated their right to procedural due process, guaranteed by the Fourteenth Amendment to the United States Constitution, primarily by obtaining and enforcing default judgments against them for alleged violations of NYCTA's rules of conduct, and satisfying those judgments against state tax refunds otherwise due to them, without adequate notice or opportunity to be heard. Plaintiffs sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, a refund of their "improperly seized tax refunds and/or garnished wages," and an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. Following the certification of a class, *see Robinson v. N.Y.C. Transit Auth.*, 2020 WL 5884055, *1 (S.D.N.Y. Aug. 31, 2020) (*Robinson I*), *adopted*, 2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020) (*Robinson II*), and a mixed ruling on summary judgment, *see Robinson v. N.Y.C. Transit Auth.*, 2021 WL 4523675, at *14-15 (S.D.N.Y. Sept. 30, 2021) (*Robinson III*), *adhered to on reconsideration*, 2022 WL 220169 (S.D.N.Y. Jan. 24, 2022) (*Robinson IV*), the parties settled the remainder of the case. However, they were unable to negotiate the amount of attorneys' fees and expenses to be paid to plaintiffs' counsel.

Now before me for report and recommendation is plaintiffs' motion, dated February 16, 2024 (Mot.) (Dkt. 211), seeking $2,444,305 in attorneys' fees and $15,101.85 in expenses, for an

aggregate award of $2,459,406.85. Mot. at. 1. The requested sum includes: (1) $812,515.00 in fees and $416.43 in expenses for the National Center for Law and Economic Justice (NCLEJ); (2) $578,170.00 in fees for the New Economy Project (NEP); (3) $889,470.00 in fees and $14,685.42 in expenses for Faegre Drinker Biddle & Reath, LLP (Faegre); and (4) $164,150.00 in fees for the Law Offices of Gerald S. Hartman (GSH). *Id.* at 1-2. For the reasons that follow, I recommend an award in the aggregate amount of $1,342,186.50, comprising (1) $450,817.50 in fees and $371.98 in expenses to NCLEJ; (2) $306,207.00 in fees to NEP; (3) $501,462.00 in fees and $14,033.42 in expenses to Faegre; and (4) $83,700.00 in fees to GSH.

## I.    BACKGROUND

Familiarity with the Court's prior decisions in this action is assumed. Consequently, I briefly summarize only the background directly relevant to plaintiffs' fee motion.

### A.    Class Certification

Plaintiffs Robinson and Evans initiated this putative class action on February 3, 2019, and filed their First Amended Complaint (FAC) (Dkt. 59) on October 11, 2019. According to plaintiffs, NYCTA obtained and enforced default judgments against them for alleged violations of NYCTA's rules of conduct – and satisfied those judgments against state tax refunds otherwise due to plaintiffs – "without adequate notice of the transit violation, the default penalties, default judgment, and/or the tax refund offset." FAC ¶ 228. Additionally, plaintiffs alleged that NYCTA's Transit Adjudication Bureau (TAB) denied them a "meaningful opportunity to contest the transit violation, the default penalties, default judgment, and/or the tax refund offset," refused to provide "access to documents needed to challenge any default judgment," and failed to "waive fees for reviewing documents in TAB's possession that are necessary to contest the default judgments entered against them, despite Plaintiffs' indigence." *Id.* ¶¶ 228-29.

In their formal Request for Relief, plaintiffs asked the Court to:

1.    Certify that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

2.    Declare that Defendant NYCTA has violated Named Plaintiffs' rights, and the rights of [the] class that they represent, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

3.    Enter an injunction (i) prohibiting NYCTA from certifying TAB default judgments to DTF [the Department of Taxation and Finance] for tax refund offset or otherwise enforcing TAB default judgments until such time as it has developed procedures to provide class members adequate notice and an opportunity to be heard; and (ii) barring NYCTA from certifying TAB judgments to DTF in cases where it does not possess and/or cannot obtain a copy of the original Notice of Violation, Default Decision and Order, or other documents that are in the record;

4.    Enter an Order awarding the Named Plaintiffs and the class that they represent litigation costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

5.    Enter an Order awarding the Named Plaintiffs a refund of their improperly seized tax refunds and/or garnished wages; and

6.    Enter an Order awarding such other and further relief as the Court deems just and proper.

*Id*. at 31-32.

On August 31, 2020, I recommended that a class be certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2), *see Robinson I*, 2020 WL 5884055, at *1, and on September 30, 2020, the Hon. Analisa Torres, United States District Judge, agreed. *See Robinson II*, 2020 WL 5814189, at *7. The class (Class) was defined as:

All persons against whom [NYCTA] has obtained or will obtain a default judgment in a New York State court. Excluded from the class are persons whose default judgments are not subject to enforcement because they (1) have been fully satisfied by voluntary payment or (2) fall outside the twenty-year statute of limitations period applicable under [N.Y.C.P.L.R.] § 211(b).

*Robinson I*, 2020 WL 5884055, at *1.

3

### B.    Summary Judgment Motions

On September 28, 2020, the parties consented to my jurisdiction with respect to their anticipated summary judgment motions (Dkt. 121), and on November 11, 2020, after discovery, both plaintiffs and defendants moved for partial summary judgment on the following three issues:

(1)    whether defendants unconstitutionally seize tax refunds to collect unpaid fines without adequate pre-deprivation notice;

(2)    whether the standards used by NYCTA's Transit Adjudication Bureau for vacating default judgments are unconstitutional because they are "secret" and/or "unreasonably narrow"; and

(3)    whether defendants' policies and practices are unconstitutional because TAB's employees routinely fail to provide individuals wishing to challenge their default judgments with copies of their original notices of violation.

*Robinson III*, 2021 WL 4523675 at *1. On September 30, 2021, this Court granted summary judgment to defendants on the first issue, ruling that "the notice that defendants provided to NOV respondents before seizing their tax refunds . . . is constitutionally adequate," *id.* at *11, *14,[1] and to plaintiffs on the second issue, ruling that defendants "failed to provide constitutionally adequate notice" as to what constituted "good cause" for vacating a default judgment. *Id.* at *13. As to the third issue, the Court denied both sides' motions, ruling that there was a "clear dispute of material fact" over whether TAB employees routinely refused to provide copies of the underlying NOVs to respondents who wished to challenge the default judgments against them. *Id.* at *14-15.

On October 15, 2021, plaintiffs moved for partial reconsideration as to the notice issue (Dkt. 158), but on January 24, 2022, after analysis, this Court adhered to its original conclusion that "the notice that defendants provide to NOV respondents before seizing their tax refunds is constitutionally adequate." *Robinson IV*, 2022 WL 220169, at *8.

---

[1] "When a transit infraction (which is a civil violation) is observed, a NYPD officer or [transit] employee issues a Notice of Violation (NOV) to the individual who committed the alleged infraction (the respondent)." *Robinson III*, 2021 WL 4523675, at *2.

### C.    Settlement

On May 2, 2022, the parties jointly requested that the case be stayed while they negotiated a settlement. (Dkt. 170.) Judge Torres granted the stay on May 4, 2022. (Dkt. 171.) The parties continued their settlement negotiations for the next ten months. On December 1, 2022, they participated in a judicially-supervised settlement conference (*see* Dkt. 184), and on March 6, 2023, they advised the Court that they had reached a settlement in principle, at which point Judge Torres directed them to file a motion for preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e). (Dkt. 188.)

On April 24, 2023, the parties jointly filed their preliminary approval motion (Dkt. 191), supported by, among other things, a joint memorandum (Prelim. Sett. App. Mem.) (Dkt. 193), in which they stated:

> The proposed settlement provides robust, systemic, and significant relief to the Class, which includes unhoused and financially vulnerable people, as it requires changes to NYCTA's policies and procedures that address the Class's concerns about adequate notice and an opportunity to obtain, and if necessary, contest, TAB notices of violation and default judgments. The settlement's provisions for ongoing monitoring and oversight of the implementation of the policies and procedures are also of great benefit to the Class.

Prelim. Sett. App. Mem. at 15-16. On June 21, 2023, Judge Torres granted the preliminary settlement approval motion and directed that notice be provided to the Class. (Dkt. 198.) On October 12, 2023, the parties filed their joint motion for final settlement approval (*see* Dkt. 204), supported by, among other things, another joint memorandum (Sett. App. Mem.) (Dkt. 207). Again, the parties represented to the Court that:

> The proposed relief to the class is beyond adequate; it is substantial. The proposed settlement provides robust, systemic, and significant relief to the class, which includes unhoused and financially vulnerable people, as it requires changes to NYCTA's policies and procedures that address the class's concerns about adequate notice and an opportunity to obtain, and if necessary, contest, TAB notices of violation and default judgments. The settlement's provisions for ongoing

monitoring and oversight of the implementation of the policies and procedures are also of great benefit to the class

Sett. App. Mem. at 12-13. Judge Torres granted the parties' motion on October 31, 2023, finding the negotiated settlement terms "fair, adequate, and reasonable to the class." (Dkt. 209 ¶ 1.)

The settlement agreement, described at some length in the parties' joint settlement memorandum, required defendants to provide a variety of equitable relief to the Class. For example, TAB was required to:

- post information at the Inquiry Desk window about how to request an NOV, an NOV Status Letter, and a Payment Status Letter;

- revise and expand its "good cause memorandum," which provides guidance to TAB hearing officers on what constitutes a good cause for vacating a default judgment, and include the complete list of good cause standards in its publicly-available "Guidelines" for respondents;

- continue its policy of providing a respondent, free of charge, with an NOV Status Letter and/or a Payment Status Letter, on request;

- amend its NOV Status Letter and Payment Status Letter templates to include the date of judgment for each listed NOV;

- continue its policy of charging no more than $1 per copy of an NOV that is less than five years old;[2]

- continue its policy of retaining the NOV underlying a default judgment for as long as TAB is permitted by law to enforce that default;

- cease enforcement of any default judgment, vacate the judgment, and dismiss the underlying NOV, if it is unable to locate that NOV within 60 days after it has been requested;

- update the NOV form to include TAB's website URL, and update the website to "conspicuously include" information about how TAB enforces NOVs, as well as how respondents can request information about, contest, and/or seek to vacate NOVs and resulting default judgments; and

---

[2] TAB adopted this policy during the pendency of this action. Before the lawsuit was filed, it charged $10 per NOV requested. *See Robinson III*, 2021 WL 4523675, at *4.

- train its staff and contractors regarding the requirements set forth in the settlement agreement.

Sett. App. Mem. at 4-7. However, the parties were unable to negotiate the payment of attorneys' fees to plaintiffs' counsel pursuant to 42 U.S.C. § 1988. Instead, they agreed that they would "reserve the issue of fees for a separate negotiation," *id.* at 7, and that, if the negotiations failed, plaintiffs would move for an award of attorneys' fees. *Id.*

### D.    The Fee Application

On February 15, 2024, the parties advised the Court that their fee negotiations had failed. (Dkt. 210.) The following day, plaintiffs filed their fee application, seeking an award in the aggregate amount of $2,459,406.85, supported by: (1) a memorandum of law (Pl. Mem.) (Dkt. 212); (2) the Declaration of Claudia Wilner (Wilner Decl. I) (Dkt. 213), attaching 59 pages of NCLEJ billing records (NCLEJ Billing) (Dkt. 213-1), attorney resumes (NCLEJ Resumes) (Dkt. 213-2), and expense records (NCLEJ Expenses) (Dkt. 213-3); (3) the Declaration of Susan Shin (Shin Decl. I) (Dkt. 214), attaching 66 pages of NEP billing records (NEP Billing) (Dkt. 214-1) and attorney resumes (NEP Resumes) (Dkt. 214-2); (4) the Declaration of Andrew Van Houter (Van Houter Decl. I) (Dkt. 215), attaching 38 pages of Faegre billing records (Faegre Billing) (Dkt. 215-1) and expense records (Dkt. 215-2); (5) the Declaration of Gerald S. Hartman (GSH Decl.) (Dkt. 216), attaching fourteen pages of GSH billing records (GSH Billing) (Dkt. 216-1); (6) the Declaration of Matthew Brinckerhoff (Dkt. 217); (7) the Declaration of Elizabeth Saylor (Dkt. 218); and (8) the Declaration of Karen Kithan Yau. (Dkt. 219.) The motion was then referred to me for report and recommendation. (*See* Dkt. 220.)

On March 15, 2024, defendants filed their papers in opposition to plaintiffs' fee motion, including a memorandum of law (Def. Mem.) (Dkt. 224) and the Declaration of Helene R. Hechtkopf (Hechtkopf Decl.) (Dkt. 223), attaching a series of Excel spreadsheets prepared by

Hechtkopf or her paralegal to analyze plaintiffs' counsel's billing records. *See* Hechtkopf Decl. ¶¶ 3-9 & Exs. A-I (Dkts. 223-1 through 223-14). Each billing entry for which plaintiffs seek fees was copied into Excel, assigned to a specific phase of litigation (*e.g.*, "class cert.," "discovery," or "summary judgment"), and sorted chronologically, by timekeeper, and by phase. Defendants then prepared a summary of that analysis (Summary Sheet) (Dkt. 223-1), showing, for example, that plaintiffs' counsel spent over 550 hours working on this case before they filed the initial complaint. Summary Sheet at ECF p. 2.

On March 29, 2024, plaintiffs filed their reply memorandum, seeking $2,467,188 in fees and $14,428.65 in expenses, for an aggregate award of $2,481,616.65 ($22,209.80 more than they requested in their moving papers). Pl. Reply (Dkt. 225) at 10. The memorandum is accompanied by three supplemental declarations, from Andrew Van Houter (Van Houter Decl. II) (Dkt. 226), Susan Shin (Shin Decl. II) (Dkt. 227), and Claudia Wilner (Wilner Decl. II) (Dkt. 228). Van Houter explains that there was a clerical error in his prior submission, resulting in two Faegre disbursements erroneously being counted twice. Van Houter Decl. II ¶ 4. Shin submits additional billing records showing that she spent 5.6 hours working on this case after February 16, 2024 (including time spent on the fee motion itself and post-judgment settlement monitoring). Shin Decl. II ¶ 6 & Ex. A. Wilner submits more legible billing records for herself, and corrected billing records for attorney Hartman (GSH Rev. Billing) (Dkt. 228-2), eliminating "an entry related to media." Wilner Decl. II ¶ 3. Additionally, Wilner submits new NCLEJ billing records showing that she, Deabler-Meadows, and Howe spent 47 additional hours "to prepare the reply brief" in support of plaintiffs' fee motion. *Id*. ¶ 4 & Ex. C. Finally, Wilner attaches a revised statement of NCLEJ's itemized expenses, with backup for most of them. *Id*. Ex. D (NCLEJ Rev. Expenses) (Dkt. 228-4).

Plaintiffs argue that they are prevailing parties, and therefore entitled to a fee award under 42 U.S.C. § 1988(b), because they "achieved significant, meaningful changes to the policies and practices at the heart of this litigation." Pl. Mem. at 7. Defendants contend that plaintiffs are not prevailing parties, because they did not achieve any of the relief requested in the FAC "except for class certification," Def. Mem. at 5, and because the settlement terms merely require that TAB "make minor changes to its website, forms, operations[,] and training[.]" *Id.* at 3.

With respect to the amount of the award sought, plaintiffs propose what they characterize as reasonable hourly rates, in many cases discounted from the rates charged by the same lawyers to paying clients, *see* Pl. Mem. at 8-13; contend that they "staffed the case with an eye toward efficiency and cost-effectiveness," *id*. at 13; and advise that they trimmed any fat before filing their fee motion by "eliminat[ing] entire categories of billing for most or all staff members," including time billed for multiple attorneys on calls and at meetings, time billed for more than one attorney to conduct a deposition or court appearance, and time billed for "travel, administrative tasks, and press advocacy." *Id*. at 13-24.

Defendants respond that "there is no way a paying client would have paid nearly $2.5 million for the extremely minor relief obtained in this case." Def. Mem. at 1. Defendants argue that plaintiffs "wildly overstaffed this case," *id*. at 10, resulting in "a great deal of overbilling," *id.* at 13, and request a "large across-the-board reduction" to the hours submitted, if counsel are entitled to any award at all. *Id.* at 13. Additionally, defendants contend, even the discounted hourly rates sought by plaintiffs' lawyers are too high, particularly since some of them are primarily business litigators lacking significant civil rights experience. *Id*. at 23-25.

## II.    ANALYSIS

### A.    Standards

In federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The purpose of the fee-shifting statute is "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, 94th Cong., 2d Sess. 1 (1976)). Section 1988 "manifests a finely balanced congressional purpose to provide plaintiffs asserting specified federal rights with 'fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys.'" *Id. at* 443-44 (Brennan, J., concurring in part and dissenting in part) (quoting S. Rep. No. 94-1011, 94th Cong., 2d Sess. 6 (1976)). When balancing these goals in the context of a contested fee motion, it is important for the court to keep in mind that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff." *Id.* at 444 n.4 (Brennan, J., concurring in part and dissenting in part).

### 1.    Prevailing Party

For purposes of § 1988(b), plaintiffs may be considered "prevailing parties" if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). The benefits obtained can be either legal or equitable, but the plaintiffs must "'achieve some material alteration of the legal relationship' between them and their adversaries, *and* that change [must] bear[] a 'judicial imprimatur.'" *Perez v. Westchester Cnty. Dept. of Corr.*, 587 F.3d 143, 149 (2d Cir. 2009) (quoting *Roberson v. Giuliani*, 346 F.3d 75, 79-80 (2d Cir. 2003)). The relief obtained need not match precisely the *ad damnum* clause in the complaint, but

must be "'of the same general type' as the relief sought." *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) (quoting *Raishevich v. Foster*, 247 F.3d 337, 345 (2d Cir. 2001)).

### 2. Reasonable Fee

"[A] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (internal quotation marks and citation omitted). In the Second Circuit, courts utilize the "presumptively reasonable fee" approach when calculating an award. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Ct. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189 (2d Cir. 2008) (citation omitted). This approach requires the court to determine counsel's "lodestar," that is, "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014). If that figure "does not adequately take into account a factor that may properly be considered in determining a reasonable fee," the court retains the discretion to adjust the award. *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)). The fee applicant bears the burden of "documenting the appropriate hours expended and hourly rates." *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley*, 461 U.S. at 437).

### 3. Reasonable Hourly Rate

"The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also id.* at 895 n.11 (the question is whether "the requested rates are in line with

those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Thus, the court must attempt to approximate "the rate a paying client would be willing to pay," while "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. To perform this task, the court should consider the variables "that we and other courts have identified as relevant to the reasonableness of attorney[s'] fees," *id.*, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Although lawyers engaged in pro bono or reduced-fee work are "in no way . . . excluded from the usual approach to determining attorneys' fees," *Arbor Hill*, 522 F.3d at 184 n.2, a lawyer who performs such work outside of his or her usual field may be compensated "at a rate lower than his or her customary rate for a different type of practice[.]" *Id.* Moreover, because the court must consider "the novelty and difficulty" of the case, the reasonable hourly rate for an experienced attorney working on a "simple, 'garden variety' civil rights case" may be lower than the rate the same attorney might command in a more complex matter. *Lilly*, 934 F.3d at 228, 231-32 ("It was entirely appropriate for the district court to consider the complexity of his or her case when deciding whether an attorney's proposed hourly rate is fair, reasonable, and commensurate with the proposed action."). Particularly where the litigation was prolonged, "current rates, rather than

historical rates, should be applied in order to compensate for the delay in payment[.]" *Dancy*, 141 F. Supp. 3d at 235 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)).

### 4. Reasonable Hours

In determining the number of hours reasonably expended, the court should review "contemporaneous time records specifying, for each attorney, the date, hours expended, and nature of the work done," *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (internal quotation marks, citation, and alterations omitted), and may also rely on "its own familiarity with the case and . . . its experience generally," together with "the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks and citation omitted). The court may discount the hours submitted by the fee applicant if the billing records are deficient or incomplete, *see Hensley*, 461 U.S. at 437 n.12, if the application includes "excessive, redundant or otherwise unnecessary hours," *Quaratino v. Tiffany & Co*., 166 F.3d 422, 425 (2d Cir. 1999), or if the court determines that attorneys are billing for "clerical tasks." *Lilly*, 934 F.3d at 234. However, judges "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) (*Hines I*) (summary order) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, "in dealing with items that are 'excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id*. at 54-55 (quoting *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149, 173 (2d Cir. 1998)).

### 5.    Degree of Success

"'The most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (affirming a 50% fee reduction for "lack of success"). Thus, a court may make "reductions of a lodestar fee by reason of the plaintiff's limited degree of success," *Kassim v. City of Schenectady*, 415 F.3d 246, 255 (2d Cir. 2005), "identify[ing] specific hours that should be eliminated . . . or . . . [by] reduc[ing] the award to account for the limited success." *Hensley*, 461 U.S. at 436-37; *see also Baird*, 219 F. Supp. 2d at 523 (reducing fees by 60% where plaintiffs accepted offers of judgment in the amount of $37,500 "because they realized, as the case progressed, that they had little hope of success on the merits").

Determining the degree of success obtained "is not limited to inquiring whether a plaintiff prevailed on individual claims," *Barfield*, 537 F.3d at 152, and requires assessing the overall "quantity and quality of relief obtained." *Carroll v. Blinken*, 105 F.3d 79, 81 (2d. Cir. 1997). In assessing the degree of success, district courts are accorded "wide latitude." *Gortat v. Capala Bros., Inc.*, 621 F. App'x 19, 23 (2d Cir. 2015) (summary order) (citation omitted); *accord Barfield*, 537 F.3d at 151 ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case.").

### B.    Plaintiffs are Prevailing Parties

Here, plaintiffs are clearly "prevailing parties" as that term is used in § 1988(b). Although they sought more relief than they ultimately obtained, that goes to the reasonableness of the fees sought, not to plaintiffs' eligibility for a fee award. Defendants' contrary arguments find no support in any of the cases they cite. Moreover, after telling this Court – twice – that the settlement "provides robust, systemic, and significant relief to the Class," Prelim. Sett. App. Mem. at 15-16;

Sett. App. Mem. at 2-13, and after obtaining the required judicial fairness imprimatur – and a classwide release – it ill behooves defendants to change their tune at the fee award stage and characterize the same relief as "extremely minimal." Def. Mem. at 6.

In my view, defendants were correct the first (and second) time. Although plaintiffs lost a very significant issue when this Court rejected their claim that the notice provided to NOV respondents before seizing their tax refunds was constitutionally inadequate, *see Robinson III*, 2021 WL 4523675 at *14; *Robinson IV*, 2022 WL 220169, at *8, they did not lose their procedural due process claim. Instead, they won summary judgment on a more modest due process issue, and were then able to negotiate a settlement that "require[d] changes to NYCTA's policies and procedures that address the class's concerns about adequate notice and an opportunity to obtain, and if necessary, contest, TAB NOVs and default judgment," Sett. App. Mem. at 12, which qualifies as relief "of the same general type" as that originally sought. *Baird*, 219 F. Supp. 2d at 520 (citation omitted). I therefore proceed to consider whether the fee award sought by plaintiffs is "reasonable."

### C.    Reasonable Hourly Rates

The inquiry on a fee application is based on "the hourly rates employed in the district in which the reviewing court sits," *Dancy*, 141 F. Supp. 3d at 236 (quoting *Weather v. City of Mount Vernon*, 2011 WL 2119689, at *2 (S.D.N.Y. May 27, 2011). Even within New York City, "prevailing hourly rates" in this district are higher than those in the Eastern District of New York, "even substantially higher." *Jones v. City of New York*, 2021 WL 3773460, at *14 (S.D.N.Y. Aug. 24, 2021), *adopted sub nom Jones v. Treubig*, 2022 WL 1223215 (S.D.N.Y. Apr. 24, 2022) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 177 (2d Cir. 2009)). Thus, although defendants are correct that some of the hourly rates plaintiffs' counsel request are too high, their reliance on Eastern District case law to support their argument, *see* Def. Memo at 22, 23, is misplaced.

Similarly, defendants lean too heavily on older authorities, *see id.* at 24, thereby failing to account for the fact that "hourly rates continue to increase." *Stanbro v. Westchester Cnty. Health Care Corp.*, 2024 WL 1214560, at *3 (S.D.N.Y. March 21, 2024).

### 1.    National Center for Law and Economic Justice

Seven of the 17 lawyers for whose work plaintiffs seek fees are affiliated with NCLEJ. Additionally, plaintiffs seek fees for one NCLEJ law intern, at the following hourly rates:

| Attorney/Employee | Requested Rate |
|---|---|
| Marc Cohan (Director of Litigation) | $650/hour |
| Claudia Wilner (Director of Litigation) | $650/hour |
| Saima Akhtar (Senior Attorney) | $550/hour |
| Katharine Deabler-Meadows (Staff Attorney) | $450/hour |
| Karina Tefft (Staff Attorney) | $350/hour |
| Amy Maurer (Staff Attorney) | $350/hour |
| Susannah Howe (Legal Fellow) | $275/hour |
| Melissa Shohet (Intern) | $125/hour |

*See* Wilner Decl. I ¶ 36.

Marc Cohan, who graduated from law school in 1979, has extensive experience in class action civil rights litigation. He served as the Director of Litigation at NCLEJ from April 1996 until his retirement in February 2020. *See* Wilner Decl. I ¶ 4; NCLEJ Resumes at ECF p. 3. By the time he retired, Cohan had more than 40 years of legal experience, most of it directly relevant to this case. *See* NCLEJ Resumes at ECF pp. 3-4. I note as well that class action civil rights litigation is often complex, and this action – undertaken on behalf of a largely indigent class – was no exception. I therefore conclude, after considering all of the *Johnson* factors, that the rate of $650

per hour for attorney Cohan, as requested, is reasonable and in line with recent awards in this district. *See Stanbro*, 2024 WL 1214560, at *4 ($700 per hour for partner-level attorneys with over 35 years of experience litigating civil rights cases); *Homeaway.com v. City of New York*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) ($650 per hour for partner with extensive civil rights litigation experience).

Claudia Wilner graduated from law school in 2002. *See* NCLEJ Resumes at ECF p. 2. Since then, she has had extensive experience in civil rights advocacy, has been judicially recognized as a "'seasoned civil rights litigator," Wilner Decl. I ¶ 6 (quoting *Alexander v. Miller*, 2021 WL 1113146 (E.D. Ky. Mar. 23, 2021) (cleaned up), and "ha[s] received numerous awards for [her] work on behalf of low-income New Yorkers." *Id.* ¶ 7. Wilner "regularly litigate[s] complex civil rights class actions in federal court, both in this District and around the country." *Id.* ¶ 4. She has represented plaintiffs since the inception of this litigation, *see id.* ¶ 1, and has served as Director of Litigation at NCLEJ since February 2020, replacing Cohan. *See id.* ¶ 4. Given her significant relevant experience, together with her leadership role at NCLEJ and in this action, an award of $650 per hour, as requested, is reasonable and in line with recent awards in this district. *See Stanbro*, 2024 WL 1214560; *Homeaway.com*, 523 F. Supp. 3d at 597.

Saima Akhtar graduated from law school in 2008 and has worked on class action civil rights lawsuits since entering practice. *See* NCLEJ Resumes at ECF pp. 10-12. Akhtar's position as a Senior Attorney at NCLEJ and her considerable experience in class action civil rights advocacy militate in favor of a robust hourly rate, but I conclude that her requested rate of $550 per hour is too high, particularly as she was not part of the NCLEJ's "core legal team" in this action. *See* Wilner Decl. I ¶ 35. An award of $450 per hour for attorney Akhtar is more reasonable, and is in line with recent awards in this district. *See Gulino v. Bd. of Educ. of the City School Dist. of the*

*City of New York*, 2024 WL 171392, at \*4 (S.D.N.Y. Jan. 9, 2024) (awarding a rate of $400 per hour to experienced senior associates who graduated in 2015 or earlier).

Katharine Deabler-Meadows graduated from law school in 2015 and has worked at NCLEJ since then, including on civil rights class actions akin to this matter. *See* NCLEJ Resumes at ECF p. 13. As a NCLEJ Staff Attorney – and a member of the "core legal team" in this case, Wilner Decl. I ¶ 35 – Deabler-Meadows participated in numerous aspects of the litigation from 2017 (when she was two years out of law school) through 2024 (at which point she was nine years out of school). *See* NCLEJ Billing at ECF pp. 32-47. Although her requested rate of $450 per hour is too high, an award of $400 per hour is reasonable, in light of Deabler-Meadows's experience with civil rights litigation and her broad scope of work on this matter, and is in line with recent awards in this district. *See Gulino*, 2024 WL 171392, at \*4.

Karina Tefft graduated from law school in 2019. *See* NCLEJ Resumes at ECF p. 14. She served as a legal fellow at NCLEJ and began working on this matter at the class certification stage. *See* NCLEJ Resumes at ECF p. 14; NCLEJ Billing at ECF p. 53. Since then, Tefft has become a Staff Attorney at NCLEJ. *See* NCLEJ Resumes at ECF p. 14. Given her relatively limited experience, particularly as compared to the other NCLEJ attorneys on this matter, Tefft's requested rate of $350 per hour should be reduced to $300 per hour. *See Olachea v. City of New York*, 2022 WL 3211424, at \*14 (S.D.N.Y. Aug. 9, 2022) (awarding $250 per hour to junior associate who graduated in 2018); *Angulo v. 36th St. Hospitality LLC*, 2020 WL 4938188, at \*17 (S.D.N.Y. July 31, 2020) ("For an associate with two to four years' experience . . . other courts in this District have found a reasonable hourly rate to be $250 to $275.").

Amy Maurer also graduated from law school in 2019. *See* NCLEJ Resumes at ECF p. 15. She served as a legal fellow at NCLEJ from September 2019 to October 2020, and as a Staff

Attorney from November 2020 to April 2021. *Id.* I note that almost all of her work on this matter was performed when she was a legal fellow. *See* NCLEJ Billing at ECF pp. 54-56. Thus, her requested rate of $350 per hour is too high. Mauer should be awarded a rate of $250 per hour, which is reasonable and in line with recent awards in this district. *See Jones v. Treubig*, 2022 WL 1223215, at *4 (awarding rates of $150 and $250 per hour to legal fellows at civil rights firm).

Susannah Howe graduated from law school in 2023 and, at the time plaintiffs' fee application was filed, worked as a legal fellow at NCLEJ. *See* NCLEJ Resumes at ECF p. 16. All of her work was performed in connection with the fee application. *See* NCLEJ Billing at ECF pp. 57-59. Given her limited experience, as well as the limited scope of her work on this matter, Howe's requested rate of $275 per hour should be reduced to $200 per hour. *See Jones v. Treubig*, 2022 WL 1223215 at *4; *Sanson v. City of New York*, 2021 WL 1191566, at *4 (S.D.N.Y. Mar. 30, 2021) ("Rates in this district for junior associates range from $200 to $350 per hour at law firms specializing in civil rights."). 11

Finally, Melissa Shohet worked as an NCLEJ legal intern on this case for approximately one month. *See* NCLEJ Billing at ECF p. 59. Shohet's requested rate of $125 per hour is reasonable. *See Medina v. Buther*, 2019 WL 4370239, at *11 (S.D.N.Y. Sept. 12, 2019) (awarding $125 per hour, described as the "prevailing market rate," for student law clerks).

### 2.    New Economy Project

Plaintiffs seek fees for the work of three NEP attorneys and three other NEP timekeepers, at the following hourly rates:

| Attorney/Employee | Requested Rate |
|---|---|
| Susan Shin (Legal Director) | $600/hour |
| Raúl Carrillo (Staff Attorney) | $450/hour |

| Raquel Villagra (Staff Attorney) | $350/hour |
|---|---|
| Sofia Butnaru (Paralegal) | $150/hour |
| Steffi Ostrowski (Intern) | $125/hour |
| Anne Meixell (Intern) | $125/hour |

*See* Shin Decl. I ¶ 12.

Susan Shin graduated from law school in 2006. *See* Shin Decl. I ¶ 26. Since then, she has worked extensively in the civil rights litigation arena, including at the Legal Aid Society and at NEP, initially as a Staff Attorney, and then as Legal Director. *See* NEP Resumes at ECF p. 2. Shin has received "numerous awards for [her] work on behalf of low-income New Yorkers." Shin Decl. I ¶ 27. In this matter, Shin "worked on all aspects of this case, including pre-complaint strategy and analysis, pleadings, written discovery, motion practice, and settlement negotiations." *Id.* ¶ 29. Notwithstanding Shin's expertise in civil rights class action litigation, and the broad scope of her work on this case, her requested rate of $600 is too high in light of her overall experience. An award of $550 per hour is reasonable and in line with recent awards in this district. *See Homeaway.com*, 523 F. Supp. 3d at 597.

Raúl Carrillo graduated from law school in 2015, *see* NEP Resumes at ECF p. 4, and worked as a Staff Attorney at NEP from November 2016 to July 2019. Carrillo "worked on pre-complaint strategy and analysis, pleadings, written discovery, and depositions." Shin Decl. I ¶ 31. Although Carrillo worked on many aspects of this case, his relatively limited experience (he was only four years out of law school when he completed his work on this matter) leads me to conclude that his requested rate of $450 per hour should be reduced to $350. *See Gulino*, 2024 WL 171392, at *4.

Raquel Villagra graduated from law school in 2018. *See* NEP Resumes at ECF p. 5. She worked as a Litigation Associate at Simpson Thacher & Bartlett LLP from September 2018 to January 2020, and then joined NEP as a Staff Attorney. *Id.* Her requested rate of $350 per hour should be reduced to $300, which is reasonable and in line with recent awards in this district. *See Olachea*, 2022 WL 3211424, at *14.

Given that student interns "are generally billed at rates similar to those of paralegals," *Medina*, 2019 WL 4370239, at *11, I analyze the reasonableness of the rates requested for Sofia Butnaru (paralegal), Steffi Ostrowski (intern), and Faith Meixell (intern) together. Their work was limited to written discovery and document review. *See* Shin Decl. I ¶¶ 34, 35. I conclude that requested rate of $125 per hour for the NEP interns and $150 per hour for paralegal Butnaru is reasonable. *See Jones*, 2021 WL 3773460, at *9 ("Over a decade ago, this Court found 'ample support' to award $150 to paralegals.") (quoting *Hnot v. Willis Grp. Holdings Ltd.*, 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008)); *Medina*, 2019 WL 4370239, at *11.

### 3. Faegre Drinker Biddle & Reath, LLP

Plaintiffs seek fees for six Faegre attorneys and two paralegals. Unlike NCLEJ and NEP, Faegre is a for-profit law firm, although it took this case on a pro bono basis. *See* Van Houter Decl. I ¶ 27. Plaintiffs request the following hourly rates for the Faegre attorneys and paralegals:

| Attorney/Employee | Requested Rate |
|---|---|
| Clay Pierce (Partner) | $700/hour |
| Brian Morgan (Partner) | $300/hour |
| Andrew Van Houter (Associate, now Partner) | $300/hour |
| Vijayasri Aryama (Associate) | $300/hour |
| Justin Ginter (Associate) | $300/hour |

| | |
|---|---|
| Isaac Smith (Associate) | $300/hour |
| Brenda Diaz (Paralegal) | $150/hour |
| Mark Ruggiero (Paralegal) | $150/hour |

*See* Van Houter Decl. I at 10.

Clay Pierce graduated from law school in 1995 and is a partner at Faegre in the Business Litigation group. *See* Van Houter Decl. I ¶ 5. His usual work involves "complex financial, investment, and securities suits[,] and [he] defends consumer lenders in class action litigation." *Id.* His usual billing rate, to paying clients, was $1,060 per hour in 2023. *Id*. Sched. 1. Although the supporting declaration states that "[e]ach of the core team members maintains an active pro bono practice," no detail is provided, and thus there is no evidence as to whether Pierce had any experience in class action civil rights litigation before commencing work on this matter. Balancing Pierce's extensive experience in other litigation fields against his apparent lack of such experience in class action civil rights litigation, I conclude that his requested rate of $700 per hour is still too high, and should be reduced to $600 per hour, which is reasonable and in line with recent awards in this district. *Cf. Stanbro*, 2024 WL 1214560, at *4.

Brian Morgan graduated from law school in 2008 and is now a partner in Faegre's Finance & Restructuring group. *See* Van Houter Decl. I ¶ 6. His usual billing rate was $865 per hour in 2023, *id*. Sched. 1, but his requested rate, for his work on this matter, is only $300 per hour, which I accept as reasonable.

Andrew Van Houter (J.D., 2012), Vijayasri Aryama (J.D., 2018), Justin Ginter (J.D., 2014), and Isaac Smith (J.D., 2015), were all associates at Faegre when they worked on this

matter,[3] and all seek rate of $300 per hour for their work on this case. *See* Van Houter Decl. I at 10. Their usual hourly billing rates, in 2023, ranged from $735 (Van Houter) to $640 (Aryama). *Id*. Sched. I. Van Houter notes that "Faegre Drinker seeks . . . reduced rates in view of the pro bono nature of [its] involvement in this matter and in order to bring the total fee request to a reasonable number without requiring [its] nonprofit co-counsel to forego fees to which they are justly entitled." *Id.* ¶ 27. The Court finds the reduced rate of $300 per hour to be reasonable and, if anything, below the relevant market. *See Gulino*, 2023 WL 8458792, at *4).

Plaintiffs seek $150 per hour for the time of paralegals Brenda Diaz and Mark Ruggiero. *See* Van Houter Decl. I at 10. This rate is reasonable and in line with recent awards for paralegal fees in this district. *See Gulino*, 2023 WL 8458792, at *4; *HomeAway.com*, 523 F. Supp. 3d at 599.

### 4.    Law Offices of Gerald S. Hartman

Plaintiffs seek fees for the work of one attorney from GSH: Gerald S. Hartman. In his declaration, he requests $700 per hour for his work on this case, GSH Decl. ¶ 7, which he took on a pro bono basis. *See* Wilner Decl. I ¶ 16. Hartman's "customary hourly rate" is $725. *Id*. ¶ 7.

Hartman has "approximately 44 years of litigation experience," GSH Decl. ¶ 3, including time as a Senior Trial Attorney at the Employment Section of the Civil Rights Division of the United States Justice Department and as a partner at various private firms. *Id.* His extensive career, which includes some relevant civil rights litigation experience, merits a substantial hourly rate – but not as high as the rate that I have recommended for Cohan and Wilner, who have devoted their professional careers to civil rights litigation. After considering all of the *Johnson* factors, I conclude that a rate of $600 per hour for Hartman is reasonable.

---

[3] Van Houter is now a partner at Faegre. Van Houter Decl. I ¶ 4.

### D.    Reasonable Hours Expended

In their moving papers, plaintiffs seek fees for 5,458.8 hours of work expended in this litigation by the attorneys and paraprofessionals discussed above, comprising (1) 1,690.3 hours for NCLEJ, *see* Wilner Decl. I ¶ 36; (2) 1,280.9 hours for NEP, *see* Shin Decl. I ¶ 12; (3) 2,255.1 hours for Faegre, *see* Van Houter Decl. I at 10; and (4) 232.5 hours for GSH, *see* GSH Billing at ECF p. 16. These are not all of the hours that plaintiffs' counsel spent on the case. For example, a total of 15 Faegre timekeepers billed a total of 2,828 hours to this matter, *see* Van Houter Decl. I ¶ 15, but plaintiffs only seek fees for 2255.10 Faegre hours, expended by the eight "core team members and supporting members" listed above. *Id*. ¶ 2. Additionally, as noted above, plaintiffs reduced the hours of the "core" timekeepers, before submitting them to the Court, by eliminating numerous duplicative or questionable entries. For example, NCLEJ "completely eliminated all time spent on press outreach, administrative tasks, and travel," and "billed for only one attorney at each team meeting, even though multiple NCLEJ attorneys typically attended such meetings." Wilner Decl. I ¶¶ 50-51. NCLEJ also eliminated "all time spent on the unsuccessful motion for reconsideration (14.4 hours) and time spent on legal research and briefing the unsuccessful due process claims insofar as that time could be separately identified (181.3 hours)." *Id*. ¶ 52.

As a result of these efforts, plaintiffs "eliminated" a total of 1,357.2 hours (approximately 20% of all hours originally billed to this matter) from their fee request. Pl. Mem. at 14. Plaintiffs acknowledge, however, that "billing judgment is subject to human error," and suggest a further "5-10% reduction if the Court finds that duplicate and non-compensable entries were missed." Pl. Reply at 6 n.3. Defendants, as discussed in more detail below, seek a deeper cut.

### 1.    Block Billing

Having reviewed the billing entries are carefully as possible without turning into a "green-eyeshade accountant," *Fox*, 563 U.S. at 838, I agree with defendants that those entries include a

fair amount of "block-billing," Def. Mem. at 10, n.2, that is, "the inclusion of more than one task in an entry," which "mak[es] it difficult for the Court to ascertain whether hours recorded in those entries were reasonable." *Spencer v. City of New York*, 2013 WL 6008240, at *7 (S.D.N.Y. Nov. 13 2013). Block billing "has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.*, 2011 WL 8955840, at *7 (S.D.N.Y. Apr. 7, 2011) (quoting *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17, 2005)), *adopted*, 2012 WL 3871394 (S.D.N.Y. Sept. 6, 2012). Two examples illustrate the point:

| Attorney | Date | Hours | Description of Tasks |
|---|---|---|---|
| Pierce, Clay (Faegre) | 4/18/2019 | 4.5 | "Calls, emails with opposing counsel regarding proposed stipulation to class certification, draft joint letter to court regarding status of class certification motion; revisions to letter based on negotiations with opposing counsel; emails re G. Hartman pro hac vice application." |

*See* Faegre Billing at ECF p. 8.

| Attorney | Date | Hours | Description of Tasks |
|---|---|---|---|
| Pierce, Clay (Faegre) | 5/3/2019 | 4.3 | "Emails, telephone conferences regarding telephone conferences regarding letter to court re proposed schedule for class certification discovery and briefing; emails re revisions to requests for documents." |

*See* Faegre Billing at ECF p. 9.

I have taken the block-billing into account in considering the extent to which the compensable hours should be reduced. *See Hines I*, 613 Fed. App'x at 55 (affirming 30% reduction, in part because block billing "frustrated meaningful review of the reasonableness of the claimed

hours"); *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces*, 2005 WL 3099592, at *7 (reducing attorneys' fee award by 25% "to account for . . . instances of block billing, vagueness, and excess"); *Sea Spray Holdings, Ltd. v. Pali Financial Grp., Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing award by 15% because of the "inherent difficulties the Court would encounter in attempting to parse out reasonable hours and manpower for appropriate tasks").

### 2.    Pre-Complaint Entries and Unreasonable Time Expenditures

Although lawyers necessarily begin their work on each case before the complaint is filed, "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the civil rights action." *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 242 (1985); *see also, e.g.*, *Davis v. City of New York*, 2011 WL 4946243, at *6 (S.D.N.Y. Oct. 18, 2011) (awarding attorneys' fees for some pre-complaint work but reducing award to eliminate fees for earlier research concerning "potential plaintiffs").

In this case, although plaintiffs seek fees for over 550 hours spent on various tasks before the case was filed, *see* Summary Sheet at ECF p. 2, the underlying billing records show that most of those hours were "useful to advance the federal claims subsequently asserted therein." *Davis*, 2011 WL 4946243, at *6. Rather than searching for potential plaintiffs, counsel were (for the most part) interviewing the two named plaintiffs on whose behalf they brought this action, reviewing their documents, attempting to obtain additional documents and information from NYCTA, brainstorming their legal theories, and drafting and editing the complaint, as well as an early version of their class certification motion. I therefore reject defendants' broad contention, *see* Def. Mem. at 14-15, that work done prior to the filing of the initial complaint is non-compensable.

However, defendants are correct that plaintiffs' counsel both overstaffed and overbilled for some of that work, as well as for many of the tasks undertaken after the complaint was filed. For example, defendants argue, with some force, that it should not have taken plaintiffs' counsel over 400 hours to get the class certified, *see* Def. Mem. at 16; over 2000 hours to conduct discovery, *see id*. at 17-18; over 800 hours to brief the cross-summary judgment motions, *see id.* at 18-1; 357 hours to negotiate the settlement, *see id*. at 19, and 96.7 hours (as of the date the fee application was filed) to prepare that application. *See id*. at 19. One of the reasons these numbers are so high is that the attorneys for *both* of the two nonprofits and *both* of the two law firms working on this case were involved in drafting and editing most of plaintiffs' major filings, including the original and amended complaint,[4] the class certification papers, and the summary judgment papers. In some cases, even relatively modest filings, such as letter-motions requesting discovery conferences, were touched by many hands, resulting in unnecessary billing.[5]

Although this case was complex and, as plaintiffs suggest, "involved novel claims," Pl. Mem. at 13, it could and should have been litigated far more efficiently, for example, by a smaller group of lawyers with experience in the field. I therefore conclude that a 20% "across-the board reduction in the amount of hours," *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997), is necessary to account for the block-billing, the overstaffing, and the excessive hours recorded. *See Adorno v. Port Authority of N.Y. and N.J.*, 686 F. Supp 2d 507, 515 (S.D.N.Y. 2010) (reducing

---

[4] *See, e.g.*, NCLEJ Billing at ECF p. 14 (multiple billing entries for Claudia Wilner for "drafting complaint"); *id.* at ECF p. 24 (multiple billing entries for Marc Cohan for "review complaint"); NEP Billing at ECF p. 2 (multiple entries for Susan Shin for drafting and editing complaint); Faegre Billing at ECF p. 2 (multiple entries for Clay Pierce for revising complaint); GSH Billing at ECF pp. 1-4 (multiple entries for Gerald S. Hartman for meetings and phone calls regarding the complaint).

[5] *See, e.g.*, Def. Mem. at 10 n.3 (demonstrating that on January 5 and 6, 2020, seven different lawyers, from NCLEJ, NEP, Faegre, and GSH, spent a total of 11 hours drafting, reviewing, revising, or commenting on a single discovery letter-motion).

hours "by 10%" to account for excess, duplicativeness, and waste"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 344-45 (S.D.N.Y. 2016) (imposing "a 30% reduction of the total number of hours for which compensation is sought" due to "excessive hours and vague entries").

### 3. NYCTA's Status as a Public Entity

Defendants contend that NYCTA's status as a "public entity, funded by tax dollars, must be taken into account." Def. Mem. at 7. They rely for this proposition on a footnote in *California Alliance of Child & Family Services v. Wagner*, 2011 WL 2837423 (N.D. Cal. July 15, 2011), and another footnote in *Woods v. State of New York*, 494 F. Supp. 201 (S.D.N.Y. 1980). I am not persuaded. *California Alliance* is an out-of-circuit case, and in any event does not support the conclusion that defendants seek to draw from it.[6] In *Woods*, moreover, the quoted language *contradicts* defendants' contention. In that case, the public entity was the fee applicant. It requested $10,106.22, but Judge Weinfeld reduced that number to $2,500, in part "to reflect the fact that the prevailing agency is supported by public funds." *Woods*, 494 F. Supp. at 206 n.18. Such a litigant, the court implied, did not require a fee award to "ensure 'effective access to the judicial process[.]'" *Hensley*, 461 U.S. at 429. I therefore reject defendants' contention that a further reduction to the fee award should be applied because NYCTA is "funded by tax dollars."

---

[6] The *California Alliance* court denied fees to the prevailing party for, *inter alia*, spending almost $7000 to send an out-of-town lawyer to the courthouse to personally file the complaint and a request for a temporary restraining order, when the documents could have been mailed or delivered by a local attorney. The court wrote, "[E]ven firms with considerable resources, who seek to recover attorneys' fees from the public purse, must factor in fiscal efficiency when purporting to serve the public good through pro bono work." *California Alliance*, 2011 WL 2837423, at *3 n.3. I do not read this language as announcing a different or special rule for fees in cases against public entities. In our circuit, parties seeking to recover attorneys' fees from *any* defendant "must factor in fiscal efficiency." *See, e.g.*, *Arbor Hill*, 522 F.3d at 190 (court must attempt to approximate the rate that a "reasonable, paying client" would be willing to pay, assuming the client "wishes to spend the minimum necessary to litigate the case effectively").

### E.     Degree of Success

"'The most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success' obtained by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar*, 506 U.S. at 114); *accord Fisher v. SD Protection, Inc.*, 948 F.3d 593, 606 (2d Cir. 2020). Here, plaintiffs won class certification – a necessary prerequisite to classwide relief – but then lost one of the three issues presented on summary judgment, and thereby lost any ability (short of a reversal on appeal) to achieve the sweeping equitable relief they sought in their pleading, which would have forced NYCTA to stop enforcing its default judgments against NOV respondents "until such time as it has developed procedures to provide class members adequate notice and an opportunity to be heard." FAC at 31.

"*Hensley* warns that '[t]here is no precise rule or formula' for adjusting the lodestar to account for limited success." *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (quoting *Hensley*, 461 U.S. at 436.) In some cases, no reduction is warranted. *See, e.g.*, *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) ("[W]hen a plaintiff has achieved partial success but 'the plaintiff's claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for [work done on] unsuccessful claims as well as successful ones.'") (quoting *Hensley*, 461 U.S. at 436) (alteration in original); *Stanbro*, 2024 WL 1214560, at *7-8 (declining to reduce plaintiff's fee award where he was unsuccessful against several individual defendants but won a $2.1 million jury verdict against other defendants for the same injuries); *Siegel v. Bloomberg L.P.*, 2016 WL 1211849, at *9 (S.D.N.Y. Mar. 22, 2016) (where prevailing plaintiffs won the "most important issue" presented by their summary judgment motion, court declined to reduce their fee award due to the "denial of summary judgment on the other two issues" raised by the motion).

In other cases – particularly where the successful and the unsuccessful claims are distinct and severable – the fee award should be discounted so as to "prevent plaintiff[s] from imposing the cost of litigating its failed . . . claims on the parties that prevailed on those claims." *Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*, 2024 WL 424870, at *10 (S.D.N.Y. Jan. 31, 2024) (reducing fee award by an additional 30% where plaintiff won a statutory damages award under the Federal Communications Act but lost another claim, under a different section of the FCA, that could have entitled it to significantly higher statutory damages), *adopted*, 2024 WL 870813 (S.D.N.Y. Feb. 29, 2024); *see also Handchu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010) (reducing fee award by 30% where "the plaintiff class and the City both scored successes and suffered failures during the pertinent rounds of litigation").

In this case, as noted above, the notice issue that plaintiffs lost at summary judgment significantly limited the equitable relief they could obtain for the Class.[7] However, the adverse summary judgment decision did not result in the dismissal of plaintiffs' procedural due process claim. That is because, in their First Cause of Action, plaintiffs alleged that NYCTA denied them procedural due process in three ways: "by (1) entering default judgments against them without adequate notice of the transit violation, the default penalties, and/or the judgment itself; (2) denying them meaningful opportunity to contest the transit violation, the default penalties, default judgment, and/or the tax refund offset; and (3) refusing access to documents necessary to challenge any default judgment." FAC ¶ 228. At summary judgment, plaintiffs lost the first issue, but won a portion of the second, and retained the right to go to trial on the third. They also retained the right to go to trial on their Second Cause of Action, alleging that NYCTA maintained an unlawful policy, custom, or practice "to not waive fees for reviewing documents in TAB's possession that

---

[7] It also prevented the two named plaintiffs from seeking the return of their "improperly seized tax refunds." FAC at 31.

are necessary to contest the default judgments entered against them, despite Plaintiffs' indigence." FAC ¶ 229. Plaintiffs were thus left in a relatively good position to negotiate the "robust, systemic, and significant relief" that they ultimately obtained through settlement.

Under these circumstances, I conclude that while the compensable hours should be adjusted to account for plaintiffs' limited success, the adjustment need not be draconian. A further 20% cut, bringing the total reduction to 40%, will adequately protect NYCTA without unduly chilling the willingness of competent civil rights counsel to take on complex cases where complete success may not be achievable.

### F.    Fees on Fees

"Ordinarily, a district court has authority and discretion to award attorney's fees for hours expended on a fee application made under the Fees Act, so-called fees on fees." *Lilly*, 934 F.3d at 235; *see also Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) (*Hines II*) ("Prevailing parties under Section 1988 are therefore entitled to recover a reasonable fee for preparing and defending a fee application."). The purpose of a fees-on-fees award is to ensure that a "culpable defendant [is not] allowed to cause the erosion of fees awarded to the plaintiff for time spent in obtaining the favorable judgment by requiring additional time to be spent thereafter without compensation." *M.D. v. N.Y.C. Dept. of Educ.*, 2018 WL 4853032, at *1 (S.D.N.Y. Oct. 5, 2018) (quoting *Hines II*, 862 F.3d at 222).

In their moving papers, plaintiffs sought fees for 96.7 hours expended on the fee application itself. *See* Def. Mem. at 19. In their reply papers, they seek additional fees for the 52.6 hours they have spent on this case since they filed their moving papers. *See* Wilner Decl. II ¶ 4; Shin Decl. II ¶ 6. This brings the total number of hours for which they seek fees-on fees to 149.3, which is an unusually high number.

31

"In awarding for so-called 'fees on fees,' '[c]ourts have held that up to thirty hours [may] be reasonably spent in preparing and defending [a] fee application.'" *Stanbro*, 2024 WL 1214560, at *11 (quoting *Torcivia v. Suffolk Cnty.*, 437 F. Supp 3d 239, 257 (E.D.N.Y. 2020)). In *Stanbro* – a single-plaintiff excessive force/denial of medical care case that resulted in a jury verdict of $2.1 million – the court found plaintiff's expenditure of 56.2 hours on his fee application to be unreasonable. *Id*. In this case, plaintiffs explain that their fee application "was particularly complex due to the length of the litigation," Pl. Reply. at 9, but do not point to any cases in which a court has found it reasonable for the prevailing parties' counsel to spend almost 150 hours just to request a fee award.

Even after adjusting for the complexity of this case, the number of lawyers who were required to submit declarations and billing records to support the fee application, and the aggressive response to that application by defendants, I conclude that 150 hours to litigate a fee application is not reasonable. Consequently, when calculating plaintiffs' lodestar, I decline to include the additional attorney hours documented only in their reply papers.

### G.    Expenses

Attorneys' fee awards "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir. 1989)). However, applications for expense reimbursement must be supported by "adequate documentation." *Stanbro*, 2024 WL 1214560 at *11 (quoting *Fisher*, 948 F.3d at 600).

In this case, plaintiffs initially requested $14,685.42 in expenses incurred by Faegre, *see* Van Houter Decl. I ¶ 31, and $416.43 incurred by NCLEJ. *See* Wilner Decl. I ¶ 55. After revising its expense calculations, Faegre now requests a slightly lower figure, $14,033.42, in expenses. *See* Van Houter Decl. II ¶ 4. I have reviewed the revised expenses, *see* Van Houter Decl. II at ECF p.

4-5, and the supporting documentation, *see id.* at ECF pp. 6-56, which is acceptable.[8] I therefore recommend that, as to Faegre, the full $14,033.42 be awarded.

As for NCLEJ's expenses, plaintiffs failed, in their moving papers, to provide admissible documentation of the $416.43 they sought, *see* NCLEJ Expenses at ECF p. 1, but largely corrected this oversight in their reply papers, *see* NCLEJ Rev. Expenses at ECF pp. 2-15, attaching backup for $395.23 of the claimed expenses. *See id.* at ECF pp. 2-15. Only one item is plainly improper: $23.25 spent on May 17, 2019, for "Food for mtg w New Economy." *Id.* at ECF pp. 1, 8. This is a "nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Stanbro*, 2024 WL 1214560, at * 11 (quoting *Torcivia*, 437 F. Supp. 3d at 257). Consequently, I recommend that, as to NCLEJ, $371.98 in expenses ($395.23 - $23.25) be awarded.

## H.    Adjustments

After carefully reviewing the parties' submissions, I have (a) reduced the rates requested by certain of plaintiffs' attorneys and paraprofessionals; (b) reduced their compensable hours by a total of 40% in light of their block-billing, overstaffing, duplicative and/or excessive hours, and limited success on the merits; and (c) declined to include any of the additional hours worked by counsel after their moving papers were filed. In addition, I have limited plaintiffs' compensable expenses to those supported by adequate documentation. My calculations are set forth below.

---

[8] In their opposition brief, defendants question why Faegre presented two invoices for the transcript of the Valerie O'Connor deposition. *See* Def. Mem. at 20. The invoices are not duplicative. The first payment of $919.80 was credited to the second invoice, resulting in a balance of $252.00. *See* Van Houter Decl. II at ECF pp. 50, 52.

**For NCLEJ:**

| Attorney/Employee | Reasonable Hourly Rate | Hours Billed | Total | After 40% reduction |
|---|---|---|---|---|
| Marc Cohan | $650/hour | 103.2 | $67,080.00 | $40,248.00 |
| Claudia Wilner | $650/hour | 437.3 | $284,245.00 | $170,547.00 |
| Saima Akhtar | $450/hour | 0.5 | $225.00 | $135.00 |
| Katharine Deabler-Meadows | $400/hour | 644.5 | $257,800.00 | $154,680.00 |
| Karina Tefft | $300/hour | 385.5 | $115,650.00 | $69,390.00 |
| Amy Maurer | $250/hour | 73.9 | $18,475.00 | $11,085.00 |
| Susannah Howe | $200/hour | 29.5 | $5,900.00 | $3,540.00 |
| Melissa Shohet | $125/hour | 15.9 | $1,987.50 | $1,192.50 |
| **NCLEJ Total:** | | | | **$450,817.50** |

**For NEP:**

| Attorney/Employee | Reasonable Hourly Rate | Hours Billed | Total | After 40% reduction |
|---|---|---|---|---|
| Susan Shin | $550/hour | 520.8 | $286,440.00 | $171,864.00 |
| Raúl Carrillo | $350/hour | 140.7 | $49,245.00 | $29,547.00 |
| Raquel Villagra | $300/hour | 554.9 | $166,470.00 | $99,882.00 |
| Sofia Butnaru | $150/hour | 5.1 | $765.00 | $459.00 |
| Steffi Ostrowski | $125/hour | 38.8 | $4,850.00 | $2,910.00 |
| Anne Meixell | $125/hour | 20.6 | $2,575.00 | $1,545.00 |
| **NEP Total:** | | | | **$306,207.00** |

**For Faegre:**

| Attorney/Employee | Reasonable Hourly Rate | Hours Billed | Total | After 40% reduction |
|---|---|---|---|---|
| Clay Pierce | $600/hour | 537 | $322,200.00 | $193,320.00 |
| Brian Morgan | $300/hour | 103.4 | $31,020.00 | $18,612.00 |
| Andrew Van Houter | $300/hour | 593.9 | $178,170.00 | $106,902.00 |
| Vijayasri Aryama | $300/hour | 731.2 | $219,360.00 | $131,616.00 |
| Justin Ginter | $300/hour | 247.4 | $74,220.00 | $44,532.00 |
| Isaac Smith | $300/hour | 29.8 | $8,940.00 | $5,364.00 |
| Brenda Diaz | $150/hour | 9.6 | $1,440.00 | $864.00 |
| Mark Ruggiero | $150/hour | 2.8 | $420.00 | $252.00 |
| **Faegre Total:** | | | | **$501,462.00** |

**For GSH:**

| Attorney/Employee | Reasonable Hourly Rate | Hours Billed[9] | Total | After 40% reduction |
|---|---|---|---|---|
| Gerald Hartman | $600.00 | 232.5 | $139,500.00 | $83,700.00 |
| **GSH Total:** | | | | **$83,700.00** |

I further recommend that plaintiffs be awarded a total of $14,405.40 in expenses, including $14,033.42 for Faegre and $371.98 for NCLEJ.

---

[9] *See* GSH Rev. Billing at ECF p. 16.

## III.    CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs, as the prevailing parties in this civil rights action, be awarded a total of $1,342,186.50 in attorneys' fees and $14,405.40 in expenses pursuant to 42 U.S.C. § 1988(b).

Dated:  New York, New York
        August 16, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS<br>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Analisa Torres at 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Torres. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).